2005 ME 56

**BLETHEN MAINE NEWSPAPERS,
INC.**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Argued: May 13, 2004.
Decided: April 22, 2005.

---

Jonathan S. Piper, Esq., Sigmund D. Schutz, Esq. (orally), Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Leanne Robbin, Asst. Atty. Gen. (orally), William R. Stokes, Asst. Atty. Gen., Augusta, for defendant.

Frederick C. Moore, Esq., Thomas R. Kelly, Esq., Robinson Kriger & McCallum, Portland, (for Roman Catholic Bishop of Portland), Keith R. Varner, Esq., Lipman, Katz & McKee, P.A, Augusta, (for Survivors Network of Those Abused by Priests and Voice of the Faithful), for amici curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS,* and LEVY, JJ.

Majority: DANA, CALKINS, and LEVY, JJ.

Concurrence: SAUFLEY, C.J.

Dissent: CLIFFORD, RUDMAN, and ALEXANDER, JJ.

Dissent: ALEXANDER, J.

LEVY, J.

[¶ 1] This case requires us to address the unique nature of investigatory records held by a government prosecutor and the circumstances in which those records must be disclosed pursuant to Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. §§ 401–410 (1989 & Supp.2004).

[¶ 2] Blethen Maine Newspapers requested Maine's Attorney General to disclose investigative records related to allegations of sexual abuse by eighteen deceased Roman Catholic priests. The Attorney General ultimately denied the request based on his conclusion that "disclosure of the investigative records relating to the deceased priests would 'constitute an unwarranted invasion of personal privacy' within the meaning of 16 M.R.S.A. § 614 [ (Supp.2004) ] of the Criminal History Record Information Act." Blethen sought judicial review of the Attorney General's decision pursuant to M.R. Civ. P. 80B, and the Superior Court (Kennebec County, *Studstrup, J.*) vacated the Attorney General's denial of the request and ordered full disclosure of the records. We affirm the court's judgment to the extent that it ordered the disclosure of the records, but conclude that the court should have also ordered the records redacted so as to eliminate the names and other identifying information of the living persons who are cited in the records. We therefore vacate the judgment and remand for further proceedings so that the records will be subject to redaction before their disclosure.

## I. CASE HISTORY

[¶ 3] Blethen, the publisher of several Maine newspapers, filed a FOAA request with the Attorney General in June 2002 seeking records pertaining to the Attorney General's investigation of alleged sexual

---

* Although not present at oral argument, Justice Calkins participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

abuse by eighteen deceased priests. FOAA prescribes that, "[e]xcept as otherwise provided by statute, every person has the right to inspect and copy any public record." 1 M.R.S.A. § 408(1) (Supp.2004). It also provides that "[r]ecords that have been designated confidential by statute" are an exception to the definition of "public records" and are not subject to disclosure. 1 M.R.S.A. § 402(3)(A) (Supp.2004).

[¶ 4] The Attorney General denied Blethen's request, having concluded that the records were exempt from disclosure under FOAA because they were confidential pursuant to the Criminal History Record Information Act, 16 M.R.S.A. §§ 611–622 (1983 & Supp.2004). The Act provides, in pertinent part:

> Reports or records that contain intelligence and investigative information and that are prepared by, prepared at the direction of or kept in the custody of a ... county[,] ... criminal justice agency ... [or] the Department of the Attorney General ... are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records would:
>
> A. Interfere with law enforcement proceedings; or
>
> . . . .

C. Constitute an unwarranted invasion of personal privacy[.]

16 M.R.S.A. § 614(1)(A), (C).

[¶ 5] The Attorney General concluded that release of the records would both interfere with law enforcement proceedings and constitute an unwarranted invasion of the personal privacy of the victims, the deceased priests, and the priests' families and congregations.[1] In response, Blethen suggested that the State redact portions of the records, noting that "[i]t would defeat the purposes of the right to know law if an otherwise public record could be withheld merely because some portion of that record is appropriately confidential." The Attorney General denied this request as well.

[¶ 6] Blethen sought judicial review of the Attorney General's action by filing an appeal with the Superior Court pursuant to M.R. Civ. P. 80B. The court affirmed the Attorney General's decision in part, finding that disclosure of information contained in the records might affect ongoing investigations and that, pursuant to section 614(1)(A), it was reasonably possible that disclosure of the information would interfere with law enforcement proceedings. The court did not determine whether there was a reasonable possibility that disclosure would also constitute an "unwarranted in-

---

1. In his letter dated June 13, 2002, Attorney General G. Steven Rowe set forth his reasons for denying Blethen's request:

First, we are at the preliminary stages of our investigation in which the dissemination of information presents the potential for interfering with law enforcement proceedings. All information, including information about conduct occurring outside the statute of limitations, has the potential through investigation to lead to prosecutable offenses. For example, some of the victims making allegations against the deceased priests may be witnesses or victims in cases involving priests who are still living. Second, even in those cases in which

we decide not to take further action, the records may be exempt from disclosure if disclosure would "constitute an unwarranted invasion of personal privacy." We have not at this time conducted any independent investigation or verification of the information from the Diocese or the allegations from victims. Accordingly, dissemination of that information at this early stage in the investigation would, in our view, constitute an unwarranted invasion of the personal privacy of not only the alleged victims, but the deceased priests, their families and the congregations that put their trust in the priests.

vasion of personal privacy" pursuant to section 614(1)(C), but retained jurisdiction of the matter. The court ordered the State to report "the status of the documents in question for law enforcement purposes" to it and Blethen in six months so that it could revisit the privacy question once the ongoing investigations were concluded.

[¶ 7] The Attorney General subsequently reported to the court and Blethen that the investigations would no longer be negatively affected by disclosure of the records related to the deceased priests. However, the Attorney General requested that the parties be afforded the opportunity to brief the second issue: whether the records remained confidential pursuant to section 614(1)(C)'s "unwarranted invasion of personal privacy" exception.

[¶ 8] After the parties' submission of their briefs and a nontestimonial hearing, the court issued its decision in which it analyzed the records pursuant to section 614(1)(C) and concluded that they should be fully disclosed. The court found that "there may be some residual privacy interest of named victims and witnesses, but due to the manner in which this information has been handled, that interest has been reduced for purposes of balancing against the public interest in disclosure." With respect to the deceased priests, the court concluded it need not decide whether they have any residual privacy rights because the public interest in disclosure of the records outweighs any personal privacy rights.

[¶ 9] The court concluded that the privacy interests of the alleged victims and witnesses, and the residual privacy interests of the deceased priests, if any, were exceeded by the public's interest in disclo-

sure of the information because it pertained to possible criminal activity and the extent to which those activities were investigated by public officials: "[A]ny residual personal privacy rights which could be claimed for those named in any capacity in the documents ... must bend to the public interest and no exceptions to release of these public documents exist under the FOAA." The court also declined to require redaction of the names of the alleged victims and other identifying information because of "how much information would have to be taken out and the extent to which this information is likely already known, at least at a local level." The State appeals from the judgment.

## II. DISCUSSION

[¶ 10] The State asserts that the court erred in ordering the release of the records because there is a reasonable possibility that public disclosure will constitute an unwarranted invasion of the personal privacy of the alleged victims, witnesses, and deceased priests identified in the records. Accordingly, the State contends that the records must remain confidential pursuant to 16 M.R.S.A. § 614(1)(C). We review the Superior Court's factual findings for clear error and its determinations of law, including the construction of FOAA, de novo. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶¶ 12, 22, 769 A.2d 857, 861, 865.

[¶ 11] Section 614(1) of the Criminal History Record Information Act, entitled "Limitation on dissemination of intelligence and investigative information," identifies eleven categories of information excepted from FOAA's presumption favoring disclosure.[2] "Reports or records that con-

---

**2.** Title 16 M.R.S.A. § 614(1) (Supp.2004) provides as follows:

1. Limitation on dissemination of intelligence and investigative information. Re-

tain intelligence and investigative information" are "confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records" will give rise to one or more of the exceptions set out in the statute.[3] 16 M.R.S.A. § 614(1).

[¶ 12] The eleven exceptions contained in section 614(1) reflect several important policy objectives. These include (1) protecting the integrity of criminal prosecutions and the constitutional right of those charged with crimes to a fair and impartial jury;[4] (2) maintaining individual privacy and avoiding the harm that can result from an unjustified disclosure of sensitive personal or commercial information;[5] and (3) ensuring the safety of the public and law enforcement personnel.[6] Section 614(1) denotes the bounds within which public officials use and disseminate intelligence and investigative information.

[¶ 13] Our focus in the present case is on the privacy exception set forth in section 614(1)(C), which is similar to its federal counterpart in the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552(b)(7)(C) (1996), that exempts from disclosure "records or information compiled for law enforcement purposes" if disclosure "could

ports or records that contain intelligence and investigative information and that are prepared by, prepared at the direction of or kept in the custody of a local, county or district criminal justice agency; the Bureau of State Police; the Department of the Attorney General; the Maine Drug Enforcement Agency; the Office of State Fire Marshal; the Department of Corrections; the criminal law enforcement units of the Department of Marine Resources or the Department of Inland Fisheries and Wildlife; or the Department of Conservation, Division of Forest Protection when the reports or records pertain to arson are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records would:
  A. Interfere with law enforcement proceedings;
  B. Result in public dissemination of prejudicial information concerning an accused person or concerning the prosecution's evidence that will interfere with the ability of a court to impanel an impartial jury;
  C. Constitute an unwarranted invasion of personal privacy;
  D. Disclose the identity of a confidential source;
  E. Disclose confidential information furnished only by the confidential source;
  F. Disclose trade secrets or other confidential commercial or financial information designated as such by the owner or source of the information or by the Department of the Attorney General;
  G. Disclose investigative techniques and procedures or security plans and proce-

dures not generally known by the general public;
  H. Endanger the life or physical safety of any individual, including law enforcement personnel;
  I. Disclose conduct or statements made or documents submitted by any person in the course of any mediation or arbitration conducted under the auspices of the Department of the Attorney General;
  J. Disclose information designated confidential by some other statute; or
  K. Identify the source of complaints made to the Department of the Attorney General involving violations of consumer or antitrust laws.

3. Not all of the public records subject to the Criminal History Record Information Act are presumed to be confidential. Section 612–A of the Act provides that "[e]very criminal justice agency that maintains a facility for pretrial detention" must record certain information regarding the identity of, arrest of, and charges against every person delivered for pretrial detention, and that, except as to juveniles, the information constitutes a public record. 16 M.R.S.A. § 612–A (Supp.2004). Unlike section 614, section 612–A does not contain a confidentiality requirement.

4. 16 M.R.S.A. § 614(1)(A), (B), (D), (E), (G), (K).

5. *Id.* § 614(1)(C), (F), (I), (J).

6. *Id.* § 614(1)(H).

reasonably be expected to constitute an unwarranted invasion of personal privacy." Cases decided pursuant to FOIA inform our analysis of Maine's FOAA. *Campbell v. Town of Machias,* 661 A.2d 1133, 1136 (Me.1995).

▆ [¶ 14] The Superior Court employed the balancing test developed by the United States Supreme Court for applying the FOIA's privacy exception, which requires courts to identify and then balance the private and public interests at play to determine whether disclosure will constitute an unwarranted invasion of personal privacy. *See Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *United States Dep't of Def. v. Fed. Labor Relations Auth.,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994); *United States Dep't of State v. Ray,* 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The disclosure of investigative records is not permitted if the invasion of personal privacy is determined to be unwarranted when weighed against the identified public interest that will be served by disclosure. Thus, we examine, in turn, (1) the personal privacy interests of the alleged victims, witnesses, and deceased priests in maintaining the confidentiality of the records sought by Blethen; (2) the public interest supporting disclosure of the records; and (3) the balancing of the private and public interests.

## A. Personal Privacy Interests

▆ [¶ 15] The personal privacy interests protected by the privacy exception are twofold. First, an individual has an interest in avoiding disclosure of personal matters, *Reporters Comm.,* 489 U.S. at 762, 109 S.Ct. 1468; second, an individual has

an interest in controlling the dissemination of personal information. *Fed. Labor Relations Auth.,* 510 U.S. at 500, 114 S.Ct. 1006. Intelligence and investigative information is an exception to FOAA's general policy requiring disclosure because such information often involves sensitive personal information that may or may not have been verified by public officials. Few people wish to be publicly associated with investigations of alleged criminal conduct, whether as a perpetrator, witness, or victim. *See Mack v. Dep't of the Navy,* 259 F.Supp.2d 99, 106 (D.D.C.2003) (recognizing that "individuals have a strong privacy interest in avoiding unwarranted association with alleged criminal activity"). People who are identified in criminal investigation reports have a substantial interest in keeping their identities closed to the public, regardless of how they are characterized in the record. *See SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205 (D.C.Cir.1991); *Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990). For these reasons, the United States Supreme Court has recognized that when the subject of a law enforcement record is a private individual, the privacy interest protected by the privacy exception is at its apex. *Favish,* 541 U.S. at 166, 124 S.Ct. 1570; *Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. 1468.

[¶ 16] The Superior Court concluded that the privacy rights of the alleged victims, witnesses, and priests have been dissipated or extinguished by (1) the information's prior public disclosure; (2) the manner in which the information came into the possession of the Attorney General; and (3) the death of the priests who are the subjects of the allegations.

### 1. Prior Public Disclosure

[¶ 17] Three of the fourteen files submitted for in camera inspection by the court

reference the prior public disclosure of certain allegations contained in the files.[7] The remaining files contain no indication of prior public disclosure, apart from the report of the allegations directly to the Diocese, a District Attorney, or the Attorney General by individuals professing knowledge of the alleged abuse.

■ [¶ 18] The prior public disclosure of information does not generally extinguish privacy interests in the nondisclosure of the same information organized and contained in the investigative records of a law enforcement agency. *See Reporters Comm.*, 489 U.S. at 770, 109 S.Ct. 1468. A person's interest in controlling the dissemination of information about oneself is an integral part of the right to privacy. *Mack*, 259 F.Supp.2d at 109. In *Reporters Committee*, the United States Supreme Court rejected the notion that a personal privacy interest does not attach to an individual's interest in keeping private a criminal "rap sheet" containing information that was already available to the public from other sources. 489 U.S. at 762–71, 109 S.Ct. 1468. "[T]he fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Id.* at 770, 109 S.Ct. 1468 (quotation marks omitted).

■ [¶ 19] Here, the prior disclosure of allegations contained in two of the fourteen files detailing allegations of sexual abuse by the deceased priests does not extinguish the interests of the various individuals named in the records in controlling the separate dissemination of the information as it is organized and portrayed in the Attorney General's investigative records.

2.  The Manner in Which the Information Came into the Possession of the Attorney General

■ [¶ 20] The Attorney General came into possession of the information concerning the deceased priests from three sources: (1) reports made by the Diocese based on information it received from current or former church members; (2) reports made by a county prosecuting attorney based on information she received from members of the public; and (3) reports the Attorney General received directly from members of the public. As the Superior Court observed, none of the reports were made under the protection of the confessional: "[T]o the extent that the alleged victims or others working on their behalf have stepped forward and lodged their complaints, their expectation of continued privacy would be diminished to the extent that the investigation being sought would require disclosure."

[¶ 21] The privacy interests reposed in the records are diminished to the extent the information was voluntarily reported to church and public authorities with the expectation that it would be used to investigate possible wrongdoing. Moreover, the Attorney General does not claim that any of the individuals who reported the information to authorities did so under circumstances where there was an express or implied understanding that their identity or the identity of others named in the records would remain confidential. *See Keys v. United States Dep't of Justice*, 830 F.2d 337, 345 (D.C.Cir.1987). Accordingly, the manner in which the information was reported dissipated the privacy interests.[8]

---

7.  The records submitted for in camera inspection contain fourteen files, one per priest, and a separate document summarizing the allegations relating to those fourteen priests, as well as four additional priests for whom individual

files were not provided. The summary does not include the dates of death for the four priests for whom a file was not provided.

8.  Contrary to the dissenting opinions, our decision does not stand for the proposition that

### 3. Privacy Interests of Deceased Persons and Their Families

[¶ 22] The Superior Court did not determine whether the deceased priests should be deemed to have a residual privacy interest in the records because of the "clear affirmative answer" it reached regarding the public interest in disclosure of the records. Before us, Blethen asserts that the privacy interests of the deceased priests named in the Attorney General's records and their immediate family members terminated with the priests' deaths.

[¶ 23] We have not previously considered whether the privacy interests protected by section 614(1)(C) continue after a person's death. The two federal circuit courts of appeals that have considered this issue in connection with the FOIA have reached different conclusions. *Compare Campbell v. United States Dep't of Justice,* 164 F.3d 20, 33 (D.C.Cir.1998) (concluding that deceased persons have "reputational interests and family-related privacy expectations [that] survive death"), *with McDonnell v. United States,* 4 F.3d 1227, 1261 (3d Cir.1993) (holding that deceased persons have "no privacy interest subject to invasion by disclosure"). More recently, the United States Supreme Court recognized in *Favish* that the relatives of a deceased person may invoke their own interest in personal privacy in connection with the FOIA's personal privacy exception: "[W]e think it proper to conclude

from Congress' use of the term 'personal privacy' that it intended to permit family members to assert their own privacy rights against public intrusions long deemed impermissible under the common law and in our cultural traditions." 541 U.S. at 167, 124 S.Ct. 1570.[9]

■ [¶ 24] Our in camera inspection of the records reveals that the passage of time has substantially dissipated or extinguished the privacy interests of the deceased priests, if any, and of their relatives. The length of time from both the alleged misconduct by the priests and their deaths is measured in decades, not years. The median number of years since the priests' deaths is twenty-five, and the average number of years since the acts of alleged abuse exceeds forty. The earliest acts of abuse are alleged to have occurred in the 1930s, and the most recent acts of abuse are alleged to have occurred not later than 1983.

[¶ 25] The disclosure of allegations that might damage a deceased person's reputation and adversely affect the peace of mind of his or her family in the years immediately following death will have considerably less effect many years later. As measured by the passage of time from both the deaths of the priests and the alleged acts of abuse, any residual privacy interests of the deceased priests and their immediate

---

a person who reports information in confidence has little or no privacy interests protected by section 614(1)(C). Our analysis in the present case is based on the fact that it is not claimed that the individuals who reported the information sought by Blethen did so with an expectation of confidentiality.

**9.** *National Archives & Records Administration v. Favish,* 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), was decided subsequent to the Superior Court's judgment in this case. In *Favish,* the Court determined that the FOIA's privacy exemption required that pho-

tographs of the corpse of former White House Deputy Counsel Vincent Foster, Jr., not be subject to public disclosure based on the privacy interests of Foster's surviving family members. *Id.* at 160–61, 168–69, 124 S.Ct. 1570. The Court stated that the privacy right asserted by the Foster family was their own right "to be shielded by the exemption to secure their own refuge from a sensation-seeking culture for their own peace of mind and tranquility, not for the sake of the deceased." *Id.* at 166, 124 S.Ct. 1570.

family members in this case are, at most, minimal. Accordingly, we need not separately determine whether the deceased priests have privacy interests within the ambit of section 614(1)(C) that survive their deaths.

4. Conclusions Regarding Privacy Interests

[¶ 26] The privacy interests of the living individuals named in the Attorney General's records are substantial based on the sensitive nature of the events described in the records. Although these interests were not diminished by the prior public disclosure of some of the allegations, the manner in which the information was reported to church and public officials diminished any expectation of continued privacy in the information. In addition, the passage of time has largely extinguished the residual privacy interests of the deceased priests, if any, and of their immediate family members.

B. Public Interest in Disclosure

[¶ 27] The Superior Court concluded that the public's interest in disclosure of information pertaining to possible criminal activity by the deceased priests and how the allegations were investigated exceeded the privacy interests of the alleged victims and witnesses, and any residual privacy interests of the deceased priests. In its complaint, Blethen asserted that it "has been engaged in ongoing investigation[s] into allegations of sexual abuse by members of the catholic clergy in the State of Maine" and that "there is great public interest in disclosure of the scope and extent of alleged sexual abuse by the clergy."

[¶ 28] With respect to the FOIA, a possible invasion of privacy is warranted only if disclosure will advance its central purpose. "[W]hether disclosure ... is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny[,] ... rather than on the particular purpose for which the document is being requested." *Reporters Comm.*, 489 U.S. at 772, 109 S.Ct. 1468 (quotation marks omitted). This standard is known as the "central purpose" doctrine. *See* Christopher P. Beall, Note, *The Exaltation of Privacy Doctrines Over Public Information Law*, 45 DUKE L.J. 1249, 1258 (1996).

[¶ 29] In *Reporters Committee*, the United States Supreme Court held that the public interest in disclosure of the criminal records of an organized crime figure did not warrant the invasion of privacy that would result. 489 U.S. at 780, 109 S.Ct. 1468. The focus is "on the citizens' right to be informed about 'what their government is up to.'" *Id.* at 773, 109 S.Ct. 1468. "That purpose ... is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* The Court concluded that, because "the basic purpose of the [FOIA is] to open agency action to the light of public scrutiny," a request that is directed at information about the persons who are the subjects of files rather than at information about the government's "own conduct" is not within the sphere of the public interest protected by the FOIA. *Id.* at 774, 109 S.Ct. 1468 (quotation marks omitted).

[¶ 30] More recently, the Court held in *Favish* that when the privacy exception is applicable, the party seeking disclosure of information must establish two elements: "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own

sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." 541 U.S. at 172, 124 S.Ct. 1570. The Court did not, however, "in this single decision attempt to define the reasons that will suffice, or the necessary nexus between the requested information and the asserted public interest that would be advanced by disclosure." *Id.* at 172–73, 124 S.Ct. 1570. Instead, it specifically held:

In the case of photographic images and other data pertaining to an individual who died under mysterious circumstances, the justification most likely to satisfy [the privacy exemption's] public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties.

*Id.* at 173, 124 S.Ct. 1570. Further, the Court added, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174, 124 S.Ct. 1570.

[¶ 31] Maine's FOAA, like the FOIA, is intended to address the public's right to hold the government accountable.[10] There is, however, no basis in the text of FOAA or the public policy it implements to cause us to engraft *Favish's* requirement of evidentiary proof of governmental impropriety to justify the public disclosure of photographic images of a corpse onto a request for written investigative records involving events that occurred many years ago. The *Favish* standard focuses on the unique and important privacy interest embodied in our "cultural tradition acknowledging a family's control over the body and death im-

ages of the deceased [that] has long been recognized at common law." 541 U.S. at 168, 124 S.Ct. 1570. The Court recognized the personal stake of family members "in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased." *Id.* In contrast, the records requested in this case involve allegations of abuse alleged to have occurred twenty to seventy years ago. The threat of the unwarranted public exploitation of grieving family members that was central to the outcome in *Favish* is not present here.

[¶ 32] FOAA's central purpose of ensuring the public's right to hold the government accountable would be unnecessarily burdened if we adopted *Favish's* evidentiary requirement for purposes of a case such as this, involving a request for written investigative records concerning events that occurred two or more decades ago. Maine's FOAA directs that it is to "be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent." 1 M.R.S.A. § 401 (1989). The public's interest in knowing what its government is up to surely extends beyond the specific concern of governmental impropriety considered in *Favish*. The records sought by Blethen are necessary for the public to understand why the Attorney General exercised his discretion not to pursue criminal prosecutions in connection with the sexual abuse allegations. An informed citizenry has no less of an interest in information that might document governmental efficiency or effectiveness than it does in information documenting governmental negligence or malfeasance. Absent

---

**10.** 1 M.R.S.A. § 401 (1989). *See also* Charles J. Wichmann III, Note, *Ridding FOIA of Those "Unanticipated Consequences": Repav-* *ing a Necessary Road to Freedom,* 47 DUKE L.J. 1213, 1217 (1998).

the unique cultural and familial interests confronted in *Favish,* the public's interest in knowing what its government is up to encompasses a broader universe of concerns than simply the possibility of governmental wrongdoing.

[¶ 33] We conclude that, under the circumstances presented by this case, the central purpose doctrine's two-pronged formulation provides the proper standard for determining whether Blethen has established a public interest that warrants an invasion of personal privacy. Accordingly, we must ask whether Blethen has demonstrated that the public interest is a significant one and whether the information sought is likely to advance that interest.

[¶ 34] Blethen asserts in its complaint the existence of a "crisis as a result of allegations of sexual abuse of children and young people by some priests and bishops." It cites the United States Conference of Catholic Bishops' Charter for the Protection of Children and Young People as having recognized that " 'secrecy has created an atmosphere that has inhibited the healing process, and, in some cases, enabled sexually abusive behavior to be repeated." ' Blethen claims that the information it seeks is directly associated with "great public interest in the disclosure of the scope and extent of alleged sexual abuse by the clergy," and that the information pertains to investigations conducted by the Attorney General and one or more District Attorneys. The Attorney General has not taken issue with any of these representations, either before the Superior Court or before us.

[¶ 35] Blethen's assertions establish a direct nexus between the records sought

and a substantial governmental activity involving a matter of great importance to an informed citizenry. The public interest sought to be advanced is significant because the request is not for information for its own sake, nor for information associated with an isolated case. Rather, the information is sought for the sake of evaluating a comprehensive investigation undertaken by the government in response to an alleged pattern of conduct that spans several decades involving the sexual abuse of children by members of the clergy. In addition, the information sought by Blethen is likely to advance that public interest, as demonstrated by the fact that the records were the basis for the Attorney General's decision not to initiate criminal prosecutions.[11] We conclude, as did the Superior Court, that Blethen's request satisfies the requirement of a substantial public interest that may warrant the invasion of personal privacy.

## C. Balancing of the Private and Public Interests

[¶ 36] The Superior Court concluded, in effect, that any residual personal privacy rights that could be claimed by those named in the documents sought by Blethen are nominal and "must bend to the public interest." The court declined to redact the names of living persons and other identifying information because of "how much information would have to be taken out and the extent to which this information is likely already known, at least at a local level." We have concluded that although the privacy rights of the deceased priests and their families are, at most, minimal, the residual personal privacy rights of the living individuals named in

---

**11.** In fact, the Attorney General had previously denied the release of the records on the specific grounds that "information contained in the reports might lead to prosecutions that

are still viable or affect ongoing violations." Six months later, the Attorney General reported to the Superior Court that no criminal charges would be filed.

the records persist, albeit tempered by the manner in which the information was reported to public and church officials.

[¶ 37] An additional analytical step is required in evaluating the privacy interests of the living individuals named in the records. If all identifying information concerning such individuals can be redacted from the records prior to disclosure and redaction does not prevent the public interest in disclosure from being fully realized, the privacy interests of the living individuals in the redacted documents become greatly reduced. The effectiveness of redaction of the records in this case was suggested by Blethen in the body of its complaint: "[I]nformation directly identifying alleged victims can be redacted consistent with the Law Court's interpretation of the FOAA." Before us, Blethen supports the Superior Court's decision not to require redaction, but also acknowledges that "[l]imited redaction, if necessary, is an eminently appropriate alternative to complete non-disclosure in this case given the extraordinary public interests."

■ [¶ 38] Maine courts can require redaction of records in connection with FOAA requests. *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 11 n. 4, 754 A.2d 353, 357 (stating that "we have held that protected information can be excised from a document to allow that document to be disclosed"). Blethen does not allege, nor has it been demonstrated, that the identification of the individuals named in the records, other than the deceased priests, is required to fulfill the public interest asserted in support of disclosure.

■ [¶ 39] The Superior Court ultimately decided against the redaction of the records sought by Blethen for two reasons: a lot of information would have to be taken out of the records, and some of the identifying information may have previously been publicly disclosed. The degree of "cutting and pasting" required to redact documents cannot justify bypassing redaction unless it is demonstrated to be truly impractical or onerous. The records at issue consist of eighty-two pages, and the elimination of the names and all identifying information (e.g., places of residence; names of family members, friends, treatment providers, and others; addresses; and phone numbers) associated with the persons named in the records, other than the deceased priests, is neither impractical nor onerous. In addition, for the reasons stated earlier, the prior public disclosure of several of the allegations does not vitiate the need to protect the privacy rights of the individuals named in the records through redaction if that can be achieved without undermining the public interest served by disclosure.

[¶ 40] Accordingly, we conclude that the public interest in the disclosure of the records is substantial and that the public interest supporting disclosure can be realized even with the redaction of all identifying information regarding the persons identified in the records other than the deceased priests. On balance, the identified public interest exceeds the privacy interests associated with the records once they are redacted. We therefore affirm the court's determination that the records requested by Blethen should be disclosed, but we vacate that portion of its decision that decided against redaction of the records prior to their disclosure. This matter is remanded for the entry of a new judgment that provides for disclosure of the records after redaction of the names and other identifying information of persons named in the records other than the deceased priests.

The entry is:

Judgment affirmed in part, and vacated in part, and remanded for further proceedings consistent with this opinion.

SAUFLEY, C.J., concurring.

[¶ 41] I concur in the result of the above opinion, but, because I disagree with its rejection of the principles outlined in *National Archives and Records Administration v. Favish*, 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), I write separately.

[¶ 42] Any analysis of the records request in this case must begin with the acknowledgment that criminal investigation records, such as the records at issue here, are not subsumed within the general sunshine laws, and, in contrast to most government records, are *not* available for public review unless certain conditions have been met. It is in minimizing this distinction that the Court's opinion goes astray.

[¶ 43] Although most public records and procedures are open to the public as a matter of declared state policy, 1 M.R.S.A. § 401 (1989), a clear exception to that policy applies to certain investigative information kept in the custody of a criminal justice agency. 1 M.R.S.A. § 402(3)(A) (Supp.2004); 16 M.R.S.A. § 614(1) (Supp. 2004). Those records are "*confidential* and may not be disseminated" if any one of eleven reasons for maintaining that confidentiality is demonstrated. 16 M.R.S.A. § 614(1)(A)-(K) (emphasis added). Unlike many other governmental records, and for the policy reasons stated in the dissenting opinion, the Legislature did not intend for such investigatory information to be *presumed* accessible to the public pursuant to

Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. §§ 401–410 (1989 & Supp.2004).

[¶ 44] The distinction between ordinary public records and criminal investigation records has an historical basis. The reluctance to release investigatory records, which contain personal and private information about individual citizens gathered through the power of the State, has been addressed in a similar context in federal law. As the Supreme Court has concluded regarding public access to prosecutorial records, the central purpose of the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (1996 & Supp.2004), is to ensure that the government's activities are open to scrutiny, not to make available information about private citizens. *See, e.g., United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

[¶ 45] There are few discernable differences between treatment of criminal investigatory records pursuant to FOIA and the treatment of the same records pursuant to Maine's parallel FOAA statute, and the associated statutes.[12] In interpreting FOIA, the Supreme Court in *Favish* recognized the unique nature of investigatory records in criminal cases and emphasized the prohibition on their release unless there are allegations and evidence of government misconduct that warrant disclosure of the information. 541 U.S. at 173–74, 124 S.Ct. 1570.

[¶ 46] I would, as the dissent does, apply the teachings of *Favish* to the analysis before us. That is, I would conclude that in the absence of an allegation of governmental wrongdoing, the interests in pro-

---

**12.** *Compare* 5 U.S.C.A. § 552(b)(7)(C) (1996) (stating that "[t]his section does not apply to matters that ... could reasonably be expected to constitute an unwarranted invasion of personal privacy") with 16 M.R.S.A. § 614(1)(C)

(Supp.2004) (stating that such records "may not be disseminated if there is a reasonable possibility that public release ... would ... [c]onstitute an unwarranted invasion of personal privacy").

tection of the witnesses, alleged victims, informants, and others who have been the subject of investigation would outweigh the public's interest in the disclosure of the records.

[¶ 47] The question then is whether there exists in the case before us a credible allegation of governmental misconduct. Admittedly, Blethen does not specifically articulate that allegation in detail, given that the complaint and briefs in the present case were filed prior to the Supreme Court's announcement of its decision in *Favish.* Nonetheless, I would conclude that the serious allegations of child sexual abuse, involving many children, made or alleged to have occurred over decades, without prosecution, is equivalent to an allegation of governmental misconduct in the present case. The number of alleged separate incidents, perpetrators, and child victims, as well as the many decades over which the allegations span, are substantial. Hence, I would conclude that the present case, unique in its factual background, presents a sufficient allegation of governmental wrongdoing to require a balancing against the private interests to be protected.[13]

[¶ 48] Engaging in that balancing test, I conclude that the public's interest in the records must prevail. The personal privacy of all witnesses and alleged victims will have been protected by the redaction of any information that could identify those individuals. The only remaining question of privacy relates then to the priests who were the focus of the reports, each of whom is now long deceased. In this highly unusual setting, where the only remaining privacy interests have all but evaporated over time, the reasons for allowing the prosecutor to withhold the records from the public have been greatly diminished.[14]

[¶ 49] In this unique setting, where the Court has protected the privacy of the alleged victims and there is no reasonable possibility that the release will interfere with law enforcement, the determination that the records may be released as redacted does not present the dangerous implications regarding law enforcement that the dissent addresses. Given the unique facts of the present case, the holding today has limited precedential force and should not have the chilling effect on prosecutorial investigations that the dissent suggests.

[¶ 50] Accordingly, I agree that, with appropriate protections for the personal privacy of alleged victims and witnesses, the release of these records is appropriate.

---

**13.** Ordinarily, I would require compliance with the *Favish* standards of good faith allegations and *evidence of* governmental negligence or impropriety before affirming a decision that releases information excepted under FOAA. *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004). The present case, however, poses special circumstances warranting greater flexibility in applying the FOAA analysis.

**14.** It is important to recall that in the present case the prosecutor has not asserted any reasonable possibility that the release of the information will interfere with law enforcement. *See* 16 M.R.S.A. § 614(1)(A) (Supp. 2004). Indeed, the Attorney General has concluded that, among the eleven reasons legislatively set forth for maintaining the confidentiality of prosecutorial records, *see* 16 M.R.S.A. § 614(1)(A)-(K) (Supp.2004), the only reason that the court should consider denying Blethen's request is the potential that dissemination could create "an unwarranted invasion of personal privacy," *id.* § 614(1)(C). The Attorney General does posit that the possible invasion of privacy in this case could have a chilling effect on future investigations. The absence of any argument related to interference with prosecutions, however, necessarily focuses our analysis on the sole issue of invasion of personal privacy.

CLIFFORD, J., with whom RUDMAN and ALEXANDER, JJ., join, dissenting.

[¶ 51] Sound public policy requires that most of the information contained in the investigative files currently in the possession of the Attorney General should be, and, pursuant to a correct interpretation of the relevant statutory law, is protected from public dissemination. Maine's Criminal History Record Information Act, 16 M.R.S.A. § 614(1)(C) (Supp.2004), protects the information contained in those · files because there is more than a "reasonable possibility" that its public release would "[c]onstitute an unwarranted invasion of personal privacy."

[¶ 52] In my view, the Court erroneously concludes that the personal privacy interests in the information contained in the files have been seriously diminished by the way the incidents of alleged abuse have been reported. Moreover, the Court departs dramatically from precedent and employs much too lenient a standard in concluding that there is a significant public interest that outweighs the privacy interests involved and warrants disclosure of the information. Accordingly, I respectfully dissent.

[¶ 53] Section 614(1) of the Criminal History Record Information Act expressly excepts certain information from public disclosure pursuant to Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. §§ 401–410 (1989 & Supp.2004).[15] Pursuant to section 614(1)(A) and (C), if the information to be disclosed contains "intelligence and investigative information" and is confidential, it may not be released as long as there is a "reasonable possibility" that public release or inspection will interfere

---

15. Title 16 M.R.S.A. § 614(1) provides:

1. Limitation on dissemination of intelligence and investigative information. Reports or records that contain intelligence and investigative information and that are prepared by, prepared at the direction of or kept in the custody of a local, county or district criminal justice agency; the Bureau of State Police; the Department of the Attorney General; the Maine Drug Enforcement Agency; the Office of State Fire Marshal; the Department of Corrections; the criminal law enforcement units of the Department of Marine Resources or the Department of Inland Fisheries and Wildlife; or the Department of Conservation, Division of Forest Protection when the reports or records pertain to arson are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records would:

A. Interfere with law enforcement proceedings;

B. Result in public dissemination of prejudicial information concerning an accused person or concerning the prosecution's evidence that will interfere with the ability of a court to impanel an impartial jury;

C. Constitute an unwarranted invasion of personal privacy;

D. Disclose the identity of a confidential source;

E. Disclose confidential information furnished only by the confidential source;

F. Disclose trade secrets or other confidential commercial or financial information designated as such by the owner or source of the information or by the Department of the Attorney General;

G. Disclose investigative techniques and procedures or security plans and procedures not generally known by the general public;

H. Endanger the life or physical safety of any individual, including law enforcement personnel;

I. Disclose conduct or statements made or documents submitted by any person in the course of any mediation or arbitration conducted under the auspices of the Department of the Attorney General;

J. Disclose information designated confidential by some other statute; or

K. Identify the source of complaints made to the Department of the Attorney General involving violations of consumer or antitrust laws.

16 M.R.S.A. § 614(1) (Supp.2004).

with law enforcement or will "[c]onstitute an unwarranted invasion of personal privacy."

[¶ 54] The language of our Criminal History Record Information Act excepting criminal history information from public disclosure is nearly identical to the language in the federal Freedom of Information Act (FOIA), 5 U.S.C.A. § 552(b)(7)(C) (1996). In interpreting FOAA to determine when information in the possession of public officials should or should not be released, we have said that we are guided by cases construing the federal FOIA counterpart.[16] *Campbell v. Town of Machias,* 661 A.2d 1133, 1136 (Me.1995).

[¶ 55] The language of the federal statute and our statute, as well as corresponding precedent, instructs that we should balance the private interests against the public interests that may be involved in deciding whether disclosure would constitute an unwarranted invasion of personal privacy. *See Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171–72, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *United States Dep't of Def. v. FLRA,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994); *United States Dep't of State v. Ray,* 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

[¶ 56] In the present case, the information in the subject files contains the identities of the alleged victims of sexual abuse by priests of the Roman Catholic Diocese of Maine and the names of the accused priests. Federal courts have wisely observed that people do not want their names connected with criminal investigations, *Mack v. Dep't of the Navy,* 259 F.Supp.2d 99, 106 (D.D.C.2003), and that the disclosure of names of potential witnesses in criminal cases carries "the potential for future harassment," *Neely v. FBI,* 208 F.3d 461, 464–65 (4th Cir.2000). Such disclosure, not only of names, but also of the substance of their statements, carries the potential for future humiliation and embarrassment. *Id.* at 465. Except for those persons who have voluntarily made their allegations public, the victims and witnesses whose names are contained in the files have a "substantial interest" in not having their names released to the public. *Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1281 (D.C.Cir.1992) (quotation marks omitted).

[¶ 57] Title 16 M.R.S.A. § 614(1)(C) reflects the Legislature's recognition of the great harm that can result from unwarranted public dissemination of information collected by law enforcement agencies. By its very nature, intelligence and investigative information is often sensitive and implicates the privacy and other fundamental rights of the individuals affected by it. The means by which intelligence and investigative information is collected is essential to the relationship between the government and its citizenry. Collection of such information depends upon the willingness of private citizens to voluntarily provide information, as well as the unique power of the government to compel citizens to disclose information through the exercise of its warrant and subpoena authority. The use and dissemination of intelligence and investigative information by

---

**16.** The language of the federal statute prevents disclosure if disclosure *"could reasonably be expected to* constitute an unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(7)(C) (1996) (emphasis added). The language of our statute is more protective of privacy rights, prohibiting release of the information if there is only a *"reasonable possibility"* that disclosure will "[c]onstitute an unwarranted invasion of personal privacy." 16 M.R.S.A. § 614(1)(C) (emphasis added).

prosecutors and law enforcement agencies are vital to effective law enforcement and to the protection of individual rights.

[¶ 58] I disagree with the Court's conclusion that the privacy interests of the people who reported the incidents, but who did not do so publicly, are diminished to any substantial degree. Although there has been some public disclosure of some of the names contained in the records,[17] most of the information, including the most private facts such as the names of victims, witnesses, and accused perpetrators, has not yet been publicly disclosed. Further, almost all of the reports were made to the Diocese and not to prosecutors,[18] and thus most of those who came forward to report alleged abuse did not do so with the certain expectation that prosecution would ensue. In my view, the privacy interests of those who made the reports have *not* been diminished to any substantial degree by the way the incidents were reported. Although the Court ultimately orders the names of the alleged victims to be redacted, it does so *not* because their privacy rights outweigh what the Court concludes is in the public interest, but rather, because *in the present case* it is neither impractical nor onerous to do so, and what the Court depicts as the public interest will not be undermined by the redaction.

[¶ 59] The federal courts have concluded that there are some "reputational interests and family-related privacy expectations [that] survive death," *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 33 (D.C.Cir.1998). I agree, and would not conclude that such interests in this case have been completely extinguished. In *Favish*, the United States Supreme Court recently recognized the privacy interest of a deceased person's immediate family members and what the survivors describe as the right, "to be shielded by the exemption to secure their own refuge from a sensation-seeking culture for their own peace of mind and tranquility, not for the sake of the deceased." *Favish*, 541 U.S. at 166, 124 S.Ct. 1570. Although I agree that the privacy interests of the families of the deceased priests have significantly diminished over time, I would *not* conclude that such residual privacy interests are so minimal that their names can be subjected to disclosure without any substantial showing of a significant public interest to make such disclosure "warranted" within the meaning of 16 M.R.S.A. § 614(1)(C). If there is no public interest that would be served by disclosure of the names, there is *no* balancing to be done because the existence of some privacy interest must necessarily outweigh no public interest. *Computer Prof'ls for Soc. Responsibility v. United States Secret Serv.*, 72 F.3d 897, 905 (D.C.Cir.1996).

[¶ 60] The Court additionally errs in the present case by concluding that there is a public interest within the meaning of our jurisprudence that is to be balanced against those privacy interests, much less a *significant* public interest that compels disclosure. The Court reaches this conclusion only by straying far from the case law that we have said we should rely on to interpret FOAA.

[¶ 61] That it is a newspaper publisher that seeks the information does not estab-

---

17. A few of the complaining witnesses whose names are included in the files at issue in the present case have made their allegations public.

18. The information was provided to the Attorney General by the Diocese without regard to whether the alleged acts were criminal pursuant to Maine law, whether the statute of limitations had run, how long ago the alleged acts may have occurred, or whether the allegations were credible.

lish the existence of a public interest sufficient to warrant an invasion of personal privacy. The existence of a public interest in the disclosure of investigation records does not turn on the identity of the person or organization requesting the information. *FLRA*, 510 U.S. at 499, 114 S.Ct. 1006. If investigative records are subject to disclosure, they are subject to disclosure to anyone who requests them.[19] *Favish*, 541 U.S. at 172, 124 S.Ct. 1570.

[¶ 62] The decision of whether a possible invasion of privacy is warranted turns on the nature of the requested information and whether its disclosure will advance the central purpose for the disclosure of investigative records. In weighing whether the public interest justifies such an invasion of privacy, a court should determine whether the disclosure of the investigative records would serve the central purpose of FOAA:

> [A]lthough there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's *central purpose* is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Reporters Comm.*, 489 U.S. at 774, 109 S.Ct. 1468 (emphasis added).

[¶ 63] The Supreme Court made clear in *Reporters Committee* that the purpose of the FOIA is to serve the public interest in determining the existence or extent of any *government* impropriety. *See id.* Thus, the requested disclosure of private information that implicates no wrongdoing on the part of a governmental entity gen-erates insufficient public interest and therefore falls well outside the scope and application of FOAA. A public interest sufficient to overcome the privacy interest protected by the privacy exemption cannot be established unless there is a claim of governmental wrongdoing and evidence to support that claim. *See Computer Prof'ls for Soc. Responsibility*, 72 F.3d 897 at 905.

[¶ 64] To allow disclosure in the absence of such evidence establishing governmental wrongdoing would render the exception to disclosure established by section 614(1)(C) ineffective. Law enforcement investigatory records would become subject to disclosure based only on a claim that there is a general public interest in the subject of an investigative record. General public interest in an investigation—i.e., that the subject has become the focus of public attention or concern—does not comport with FOAA's central purpose. Such a relaxed standard will be impractical to implement in view of the hundreds or possibly thousands of law enforcement investigations that are of interest to the general public, and which lead to the filing of so many criminal cases in our courts each year. If such a low threshold for disclosure is adopted as the standard for determining whether sensitive confidential information is to be disclosed, the chilling effect on the willingness of individuals to cooperate in criminal investigations could be substantial. If victims and witnesses, understandably reluctant to participate in criminal investigations, come to understand that confidential records documenting their cooperation will be readily subject to disclosure to anyone who can establish a general

---

19. This could include not only members of print and other media, but also individual curiosity seekers or other people or organizations in what the *Favish* opinion characterizes as "a sensation-seeking culture." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 160–61, 166–67, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004).

public interest in the subject, that cooperation will be vastly more difficult to achieve.

[¶ 65] Accordingly, to establish the existence of a public interest that would warrant disclosure of the names in the files in the present case, Blethen should be required to produce evidence "that would warrant a belief by a reasonable person that . . . alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174, 124 S.Ct. 1570. This it has failed to do. Blethen's Rule 80B complaint alleges only that "there is a great public interest in disclosure of the scope and extent of alleged sexual abuse by the clergy." The complaint does not assert any government impropriety, nor does the record suggest or address any impropriety in the investigation conducted by the Attorney General or other governmental agencies. Most of the records were turned over voluntarily to the Attorney General, or to the District Attorney, not by the people asserting the abuse, but rather by the Diocese. Although, as suggested by Blethen, the records may be relevant to whether the Diocese of Portland mishandled allegations of sexual abuse by its priests, the Diocese is a private actor. The disclosure of records that may reflect on the conduct of the Diocese does not fall within FOAA's central purpose of subjecting government activities to public scrutiny.

[¶ 66] Blethen failed to allege, and certainly has not established, that any government impropriety has occurred. In my view, the Court deviates from established precedent to improperly conclude that general public curiosity meets the "substantial public interest" standard, and is sufficient to warrant the invasion of the privacy interests concerned.

[¶ 67] Even though the Court comes to a final conclusion that the names of the witnesses making the allegations should be redacted prior to disclosure of all the other information in the files, it does so only after determining that the redaction can be easily accomplished. The protection of the privacy interests of witnesses who come forward in criminal investigations should not depend on the broad discretion of a trial court to determine, perhaps years later, whether the act of redacting the names of those witnesses before the files containing their names are released is "impractical" or "onerous," or whether redaction will undermine a vague and general public interest. Such a standard has serious implications for the ability of law enforcement agencies to gather investigatory information.

[¶ 68] Police and prosecutors will not be able to give complete assurance of confidentiality to persons contemplating reporting crimes and evidence of crimes. Knowledge that criminal investigative files may be released and publicized on demand by any organization or person will have the effect of deterring the reporting of criminal activity out of fear that, even if prosecution is not initiated, humiliating and embarrassing events in personal lives may be revealed years later. Especially affected will be victims of traumatic and sensitive crimes, such as sexual assault.

[¶ 69] I would vacate the judgment and remand for the entry of a judgment in favor of the State of Maine and the Department of the Attorney General.

ALEXANDER, J., dissenting.

[¶ 70] I join Justice Clifford's dissent. I respectfully dissent separately to emphasize what serious changes we are adopting in practices regarding confidentiality of criminal investigations.

[¶ 71] In our democracy we hope that there is a substantial public interest in government integrity, prompt reporting and successful prosecution of crime, re-

specting the rights of the accused, and protecting the privacy of sex crime victims. That substantial public interest does not create a license for newspapers, or anyone else, to review old case files [20] and publicize or use them as they see fit. The Court's opinion [21] focuses on the fact that some of the cases involve sexual abuse that occurred several decades ago, but the precedent it establishes is by no means limited to decades old cases. In fact, the files at issue were developed by the Attorney General's office rather recently, and it would seem that there would be an even greater public interest in disclosure, if the Court's reasoning is followed, if the unprosecuted events had occurred more recently in time.

[¶ 72] The Court's opinion holds that disclosure of the criminal investigative records sought by the newspapers "is likely to advance that public interest, as demonstrated by the fact that the records were the basis for the Attorney General's decision not to initiate criminal prosecutions." In essence the Court is saying that once a decision not to prosecute is reached, the "public interest" may be invoked to justify turnover of investigative records to the press, and anyone else who asks, regardless of the risk of harm or embarrassment to victims, to individuals who may have been wrongly or mistakenly accused, or to witnesses who have reported relevant information.

[¶ 73] As Justice Clifford points out, with this change in the law, criminal investigators can no longer assure confidentiality, absent necessary disclosure during prosecution, to persons reporting embarrassing and humiliating events in their

lives. Without the protections that the assurance of confidentiality has previously provided, victims and witnesses may be deterred from reporting evidence of crimes, particularly if the revelation of that evidence could cause harm or embarrassment to themselves or people they care about. To this extent, the newspapers' success today may work against the public interest, deterring victims from reporting events of sexual abuse or violence out of fear of later revelation of their reports in the press.

[¶ 74] The Court's opinion also suggests no mechanism in the disclosure process to protect an individual who, years ago, may have been wrongly or mistakenly accused. Persons wrongly or mistakenly accused of crimes risk being pilloried in public by newspapers reporting accusations that competent, professional prosecutors have determined do not constitute prosecutable offenses.

[¶ 75] The protections provided by a court-ordered redaction, focused on by the Court, are illusory. Redaction is a choice for the court; it may or may not be ordered when disclosure is sought one year or twenty years later. If it is too "onerous," to use the Court's language, it need not be ordered at all. Redaction cannot be promised to a victim contemplating reporting a crime and would probably provide no protections for an individual wrongly or mistakenly accused of criminal activity.

[¶ 76] The Legislature could not have intended this result when it adopted the exceptions to the confidentiality of criminal investigative information in section 614.

---

20. The Court's opinion addresses unprosecuted cases. The statute the Court interprets, 16 M.R.S.A. § 614(1), is not so limited and applies to any information in police and prosecutor's files.

21. References to "the Court's opinion" are to the opinion of the three Justice plurality whose result, but not reasoning, is joined by the Chief Justice.

Nothing in the history of the legislation suggests that the Legislature intended that when a prosecutor reaches a difficult decision not to prosecute, the "public interest" may be invoked by anyone to require that the prosecutor's investigative records be turned over to the press on demand for any use, responsible or salacious, that anyone chooses to make of the record.