ENTERED NOV 2 0 2014

STATE OF MAINE                    SUPERIOR COURT
KENNEBEC, ss                      DOCKET NO. AP-13-40
                                  KEN-MMM-5/24/2014

PHILIP BOWLER, SR.,
    Plaintiff/Appellant,


v.                                **ORDER**


STATE OF MAINE,
    Defendant/Appellee.


Before the Court is Philip Bowler's appeal from the denial by the Office of the Attorney General of Bowler's request to obtain access to investigative materials pertaining to the death of Sally Moran. Plaintiff argues that he is entitled to the records pursuant to Maine's Freedom of Access Act, 1 M.R.S.A. § 400 *et seq.* and because P.L. 1993, ch. 719, § 11 is unconstitutional.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2013, Mr. Bowler made a request pursuant to the Maine Freedom of Access Act to examine the investigative materials in the possession of the Attorney General's Office pertaining to Sally Moran, who disappeared from Monhegan Island on July 9, 1953 and whose body was later found near Portland Headlight on July 30, 1953. (Br. of Resp. 1.) The Attorney General's Office located the investigative records requested by Mr. Bowler, however, on September 19, 2013, based on P.L. 1993, ch. 719, § 11, denied Mr. Bowler's request. On September 26, 2013, he filed an appeal of the Office of the Attorney General's September 19, 2013 decision, pursuant to 1 M.R.S.A. § 409(1). The parties conferred telephonically with the Court and agreed to a stipulation of facts as laid out in the parties' pleadings, in lieu of a trial. The Court has reviewed in camera the documents at issue, considered the oral arguments of the

1

parties, as well as their written submissions (the last of which was received on March 27, 2014) and issues the following order.

## STANDARD OF REVIEW

On appeal, a party aggrieved by a Freedom of Access Act denial is entitled to *de novo* review in the Superior Court. 1 M.R.S.A. § 409(1). Thus, the Court eschews the ordinary 80C standard of review contained in the Administrative Procedure Act. *Maine Today Media, Inc. v. State*, 2013 WL 1495310 (Me. Super. Mar. 6, 2013), *rev'd on other grounds*, 2013 ME 100, 82 A.3d 104. On such an appeal the burden of establishing just cause for the denial of the request falls upon the municipality or governmental agency seeking to withhold the document or documents in question. *Maine Today Media, Inc. v. City of Portland*, 2013 WL 4516548, at *1 (Me. Super. June 24, 2013) (citing *Town of Burlington v. Hospital Admin. District No. 1*, 2001 ME 59 ¶ 13, 769 A.2d 857).

With respect to the second claim made by the Plaintiff, that the statute (P.L. 1993, Ch. 719) in question is unconstitutional, he bears the burden to overcome the presumption that the law is constitutional. *Godbout v. WLB Holding, Inc.*, 2010 ME 46 ¶5.


### *Whether there is just cause for the State to withhold the documents*

Pursuant to section 408-A of the Maine Freedom of Access Act, any "person has the right to inspect and copy any public record in accordance with this section within a reasonable time of making the request to inspect or copy the public record." 1 M.R.S. § 408-A. Section 402 of the Act defines the term "public records" as "any written, printed or graphic matter or any mechanical or electronic data compilation . . . that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, . . . and has been received or

2

prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business," but it specifically excludes "[r]ecords that have been designated confidential by statute." 1 M.R.S.A. § 402.

Prior to 1995, Maine law, specifically 5 M.R.S.A. § 200-D, provided that "[n]otwithstanding any other provisions of law, all . . . investigative records of the Department of the Attorney General shall be and are declared to be confidential." (Br. of Resp. Ex. B.) However, in 1995,[1] 5 M.R.S.A. § 200-D was repealed by P.L. 1993, ch. 719, which in relevant part provides as follows:

> Reports or records that contain intelligence and investigative information and that are prepared by, prepared at the direction of or kept in the custody of . . . the Department of the Attorney General are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records would:
> A. Interfere with law enforcement proceedings;
> B. Result in public dissemination of prejudicial information concerning an accused person or concerning the prosecution's evidence that will interfere with the ability of a court to impanel an impartial jury;
> C. Constitute an unwarranted invasion of privacy;
> D. Disclose the identity of a confidential source . . .

P.L. 1993, ch. 719 § 7.[2]

In other words, investigative records of the Department of the Attorney General became "public records" unless they fell into one of the categories enumerated in P.L. 1993, ch. 719 § 7. Additionally, section 11 of P.L. 1993, ch. 719, specifically provided that "[r]eports and records that were created prior to the effective date of this Act that were confidential pursuant to the Maine Revised Statutes, Title 5, section 200-D at the time of their creation continue to be

---

[1] Chapter 719 of the public law of 1993 was introduced in 1993, but became effective on July 1, 1995.
[2] There are seven additional grounds that require keeping the Department of the Attorney General's reports and records confidential, however, they are irrelevant to the facts of this case because they protect confidentiality of: trade secrets, mediations and arbitrations, consumer and antitrust complaints.

3

confidential after the effective date of this Act as provided in the former Title 5, section 200-D."
P.L. 1993, ch. 719 § 11.

In *Dunn & Theobald, Inc. v. Cohen*, the Law Court was presented with the question of whether under the Maine Freedom of Access Act, citizens have a right to inspect and copy investigative records of the Attorney General created prior to the enactment of Title 5, section 200-D. 402 A.2d 603 (Me. 1979). The Law Court held that the purpose of Title 5, section 200-D was "to accord protection against disclosure of continuing sources of information and against unfair injury to the reputations of third persons" and that these protections afforded by Title 5, section 200-D "would be achieved only by applying [this section] to All investigative records, including those that were in the custody or possession of the Attorney General on April 1, 1976." *Id.* at 605. Thus, according to *Dunn*, the protection of 5 M.R.S.A. § 200-D extended not only to the Attorney General's records created pursuant to the statute, but also to records that were already in the custody and possession of the Attorney General on April 1, 1976, such as records sought by Mr. Bowler, which were created in 1953.

Because the State has the burden to just cause for withholding the documents, the State has to establish that the records he is seeking are not public records (as defined by 1 M.R.S.A. §402) but are confidential by statute. The statutes at issue in this case are P.L. 1993, ch. 719 § 7 and P.L. 1993, ch. 719 § 11.

The records Mr. Bowler requested from the Attorney General are "written" documents "in the possession or custody of an agency," *i.e.,* the Office of the Attorney General, and have been "prepared for use in connection with the transaction of public or governmental business," *i.e.,* criminal investigation of Ms. Moran's death. 1 M.R.S.A. § 402. Thus, they fit the general definition of "public records."

4

However, the records he is seeking are excluded from "public records" by P.L. 1993, ch. 719 § 7,[3] because, according to *Dunn*, the records are subject to 5 M.R.S.A. § 200-D. Although they were created in 1953, prior to the enactment of 5 M.R.S.A. § 200-D, they were in the custody and possession of the Attorney General on April 1, 1976. Consequently, pursuant to P.L. 1993, ch. 719 § 11, as "records that were created prior to 1995" and "that were confidential pursuant to the Maine Revised Statutes, Title 5, section 200-D," they "continue to be confidential." In light of the foregoing, P.L. 1993, ch. 719 § 11 prohibits the Attorney General to release the records requested by Mr. Bowler to the public. The Court concludes that the State has therefore established just cause for not providing Mr. Bowler access to the documents in question.

### *Constitutionality of P.L. 1993, ch 719 § 11*

Plaintiff further argues that P.L. 1993, ch. 719 § 11 is unconstitutional because it denies him equal protection of the law. Plaintiff asserts that because the denial by the Office of the Attorney General his request to obtain access to investigative materials pertaining to Sally Moran's death was based on an allegedly unconstitutional statute, it should be vacated. Plaintiff

---

[3] In support of the claim that neither of the P.L. 1993, ch. 719 § 7 restrictions apply here Plaintiff requests that the Attorney General's Office redact the portions of the record that contain disclosure of identity of any confidential sources. (Br. of Pet. 7.) The investigative records at issue were created in connection with Sally Moran's death, which occurred on July 9, 1953. (Br. of Pet. 2.) On November 24, 1953, the criminal investigation of Ms. Moran's death was closed and no further known investigations or proceedings were conducted. (Br. of Pet. 2, 6.) Not a single person was indicted in connection with Ms. Moran's death. (Br. of Pet. 6.) He argues that the release of the records cannot interfere with any ongoing law enforcement proceeding or result in public dissemination of prejudicial information concerning an accused person; nor can the release of records constitute an unwarranted invasion of privacy because people who would be able to make such a claim are deceased. (Br. of Pet. 6.)

claims that P.L. 1993, ch. 719 § 11 treats him differently from individuals seeking records generated by the Attorney General's office after July 1, 1995.[4]

Unlike the State's burden discussed above regarding just cause for withholding the documents, because Mr. Bowler asserts that the statute in question is unconstitutional, he bears a heavy burden: "To prevail against the presumption that every statute is constitutional, ... the parties challenging the statute[ ] must demonstrate convincingly that the statute and the Constitution conflict. [A]ll reasonable doubts must be resolved in favor of the constitutionality of the statute." *Mallinckrodt US, LLC v. Maine Dep't of Envtl. Prot.*, No. BCD-AP-11-02, 2013 WL 1845793, at *9 (Me. Bus. & Consumer Ct. Jan. 25, 2013) (quoting *Godbout v. WLB Holding, Inc.*, 2010 ME 46, ¶ 5, 997 A.2d 92).

The Maine courts apply "a two-step test to determine whether a statute violates the Equal Protection clause. First, the party challenging the statute must show that similarly situated

---

[4] Plaintiff also asserts that he was treated differently from 1) Sally Moran's family members who allegedly received a copy of the records at issue; and 2) individuals seeking investigative records generated by the Attorney General's office in relation to Sara Cherry's death. The allegations that Sally Moran's family had access to the records do not have factual support in the record. In addition, Plaintiff, a member of general public, is not "similarly situated" to the victim's family who should be afforded a greater right of access to the investigative information. *See, e.g., Van Dyke v. Wilkinson*, 25 F.2d 763, 766 (E.D. Wis. 1928) (holding that in the context of inheritance or succession tax laws, classification between relatives and strangers does not violate the principle of the equal protection of the laws).

As to the classification of the pre-1995 Attorney General records into those relating to the homicide of Sara Cherry of Bowdoin and those that are not, the Legislature specifically created this distinction by enacting Chapter 18 of the Private and Special Laws of 2003, which made public the intelligence and investigative reports relating to the unlawful homicide of Sara Cherry of Bowdoin. Private resolves, just like every act of the legislature are presumed to be constitutional. *Brann v. State*, 424 A.2d 699, 703 (Me. 1981). As stated in the legislative history, a legitimate governmental objective could be attributed to the classification created by Chapter 18 of the Private and Special Laws of 2003: allowing public access to the Attorney General's investigation pertaining to the homicide of Sara Cherry "would go a long way to getting rid of distrust." L.D. 1097, Office of Policy and Legal Analysis (121st Legis. 2003). In other words, based on the particular facts and circumstances surrounding Dennis Dechaine's conviction, legislators concluded that the concerns of openness and public trust outweighed the interest of P.L. 1993, ch. 719 § 11 in protecting confidentiality of informants. *See, e.g., Brann v. State*, 424 A.2d 699, 703 (Me. 1981) (no equal protection violation where the legislature enacted a special resolve allowing waivers of sovereign immunity on a case-by-case basis after considering the specific circumstances of each case). The Court would note that such a resolve remains an option for the Plaintiff.

persons are not treated equally under the law." *See, e.g., Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 26, 989 A.2d 1128. Then, if the challenge does not involve a fundamental right or suspect class, the test is whether the statute is rationally related to a legitimate state interest. *Id.*

Section 11 of chapter 719 of the public law of 1993 classifies the Attorney General records into those prepared before July 1, 1995 and after July 1, 1995. This classification does not involve either a fundamental right or a suspect class, and so must be upheld if it has a rational relationship to a legitimate interest of the government. *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 26, 989 A.2d 1128. Here, Defendant cites to the legislative history that articulates a legitimate state interest in protecting confidentiality of the pre-1995 Attorney General records, but not the post-1995 records: to protect informants who were assured by criminal investigators that their identity and the information they disclosed would remain confidential pursuant to 5 M.R.S.A. § 200-D. The legislative record contains a statement by Representative Lip~~man~~ that, in relevant part, provides as follows:

> [F]rom 1976 when this section 200-D became effective and gave confidentiality to the Department of the Attorney General, since that time assurances have been given by the investigators of our state to witnesses, confidential informants and others who cooperated with the State of Maine in our investigations. . . . There is enough distrust now—to retroactively open up some of those files where people had been given assurances that if they cooperated with ou[r] state in all kinds of criminal investigations, not just one or two in the last year, but all kinds, would be wrong.

5 Legis. Rec. H-1869 (Mar. 29, 1994).

Thus, Plaintiff has failed to show that no "conceivable state of facts either known, or which can reasonably be assumed, supports the legislative action." *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 30, 989 A.2d 1128 (quoting *Aseptic Packaging Council v. State*, 637 A.2d 457, 459–60 (Me.1994)). For the following reasons, Plaintiff's equal protection claim fails.

7

With respect to the issue of whether the rational basis for P.L. 1993, ch. 719 § 11 applies to the records that were created in 1953, prior to the enactment of 5 M.R.S. § 200-D in 1976, the Court is compelled to find that it does. The Freedom of Access Act did not become effective until 1959, and it was not until 1975 that the Act covered the type of "public records" sought by Bowler. *See* R.S. 1954, Ch. 1 §§ 36-41; 1 M.R.S. § 402-A (1975) (introducing the definition of "public records"). This means that whoever was participating in the investigation of Ms. Moran's death presumably cooperated with the investigation upon having been given assurances that the disclosed information or the identity of the informant would not become public because a right to access the Attorney General's investigative records under the Freedom of Access Act did not exist in 1953.

Even if Plaintiff were to argue that the classification created by P.L. 1993, ch. 719 § 11 is unconstitutionally over-inclusive[5] because it extends its burden not only to those who are similarly situated with respect to the legitimate state interest articulated by Defendant— protection of informants whose confidentiality was guaranteed by 5 M.R.S. § 200-D—but also to others as well, he would not succeed. This Court acknowledges that P.L. 1993, ch. 719 § 11 covers not only records that contain names of individuals whose confidentiality must be protected, but also records where informants who are now deceased, as may also be the case with the records pertaining to Sally Moran's death. Protecting the identity of deceased informants could be viewed as carrying less legitimacy as a state interest, and an argument could be made that keeping such records confidential after such long passage of time makes no sense. However, that is not the standard the Court is obligated to follow. This classification is subject to a very minimal level of scrutiny, and under it the Court cannot not find P.L. 1993, ch. 719 § 11 unconstitutional even if it is not "right on target." *Walker v. Yucht*, 352 F. Supp. 85, 99 (D. Del.

[5] Neither party raised the issue of "over-inclusiveness."

8

1972). "To comply with the fourteenth amendment, under the traditional test, the state is not required, in designing its classification, to achieve mathematical precision." *Id.* As long as it is *conceivable* that the classification bears a rational relationship to an end of government, which is not prohibited by the Constitution, the Court must uphold the statute. Rotunda & Nowak, *Treatise on Constitutional Law: Substance and Procedure* §18.3(a)(ii) (4th ed. 2008) (emphasis added).

Finally, Plaintiff's reliance on *Maine Today Media, Inc. v. State of Maine* is misplaced. 82 A.3d 104 (Me. 2013). In *Maine Today Media*, the Attorney General's office refused to release Enhanced 9-1-1 records regarding an altercation that resulted in a homicide investigation based on the claim that these records were designated confidential by Criminal History Record Information Act (CHRIA) and thus, were not subject to 1 M.R.S. § 408-A. *Id.* The participant in the altercation in *Maine Media Today* had already been subject of an initiating criminal complaint when Maine Media Today made its request for records, and the State did not identify any particular investigation yet to be completed in the matter or how it could be affected by availability of transcripts. The Law Court vacated the Attorney General's decision and held that CHRIA's exclusions did not apply because the State failed to establish a reasonable possibility that disclosure of the transcripts sought would interfere with the law enforcement proceedings. *Id.*

Here, although the release of records sought by Mr. Bowler cannot be said to interfere with any on-going law enforcement proceeding—the criminal investigation of Ms. Moran's death had been closed long time before Plaintiff made his request for records and not a single person was indicted in connection with Ms. Moran's death—the records that are subject to this appeal are unambiguously designated confidential by P.L. 1993, ch. 719 § 11 and are not even

9

subject to analysis under CHRIA. More fundamentally, the Law Court, in the *Maine Media Today* analysis of CHRIA, did not announce a new rule of law with respect to any other statutes, nor did it create an open-ended right—statutory or constitutional—for citizens such as Plaintiff to have access to any and all Attorney General records. Instead, it carefully restricted its analysis to pertinent statutes, and this Court has to do the same. Given the clear language of the statutes involved here, and the very deferential analysis that the Court has to use in considering the constitutional challenge presented, it remains up to the Legislature or the Law Court to decide if the public should have access to these documents.

The entry will be:

Philip Bowler's appeal from the Office of the Attorney General's September 19, 2013 decision is **DENIED.**

4/24/14

**DATE**

**SUPERIOR COURT JUSTICE**

<u>Kennebec</u>    Docket No. AP-13-40    F
                                                County

Action: <u>Petition for Review</u>                    **J. Murphy**
              80C


Phillip Bowler, Sr.                    vs.    State of Maine, Office of Attorney General

Plaintiff's Attorney                                    Defendant's Attorney

Phillip Bowler, Sr. - Pro Se                    William R. Stokes, DAG
395 North Street                                    6 State House Station
Burlington, VT  05401-1620                    Augusta, ME 04333


Date of Entry

| | |
|---|---|
| 10/1/13 | Petition For Review, filed.  s/Bowler, Pro Se |
| 10/3/13 | Entry of Appearance for State of Maine, filed. s/Stokes, DAG |
| 10/4/13 | Amendment to the Summary of the Claim, filed 9/30/13.  s/Bowler, Pro Se |
| 10/7/13 | Certificate of Certified mail service on William R. Stokes. served 9/26/13. Filed 10/07/13 s/Bowler. |
| 10/23/13 | Phone conference scheduled for 10/25/13 at 2:30.<br>Parties contacted by Clerk's office on 10/18/13. |
| 10/23/13 | Plaintiff's Brief in re: Denial of Freedom of Access Act, filed 10/21/13.  s/Bowler, Pro Se |
| 10/29/13 | Phone conferenced held 10/25/13.  J. Murphy, Petitioner, DAG Stokes. |
| 10/29/13 | ORDER, Murphy, J.  (10/15/13)<br>Deputy AG Stokes has until 11/15/13 to file brief.  Court accepts Plaintiff's brief docketed on 10/23/13 as his filing.  Plaintiff has until 11/29/13 to file rebuttal brief.  Parties agree that factual assertions made in Mr. Bowler's appeal may be relied upon by Court as facts are not essentially in dispute.<br>Copy to Petitioner and DAG Stokes. |
| 11/13/13 | State of Maine's Memorandum of Law, filed 11/12/13.  Investigative Records filed under seal for *in camera* inspection by the Court, filed 11/12/13.  s/Stokes, DAG |
| 11/19/13 | Rebuttal Brief, filed 11/18/13.  s/Bowler, Pro Se |
| 11/19/13 | Oral argument scheduled for 11/25/13 at 10:00.<br>Notice of Hearing mailed to Petitioner and DAG Stokes. |
| 11/21/13 | Amendment to Rebuttal Brief, with Exhibits A and B, filed.  s/Bowler, Pro Se |

11/26/13    Oral argument held 11/25/13, J. Murphy presiding.
            Petitioner and DAG Stokes appeared.
            Tape 1772, Index 979-2067.
            Under advisement.

12/10/13    Letter, filed 12/5/13. s/Martha Wolfe

12/10/13    ORDER FOR FURTHER BRIEFING, Murphy, J. (12/9/13)
            The Court orders further briefing so that both parties can be fully heard on the issue of
            equal protection. The State shall file by January 10, 2014 a supplemental brief on the issue
            of whether an equal protection claim can be made under these circumstances; and if so,
            what standard of review the Court should use in analyzing the claim, and what the result of
            that analysis should be. Mr. Bowler has until January 24, 2014 to file a supplemental brief
            on the same issues. If he fails to do so, the Court will take the matter under advisement
            and issue a written decision without further oral argument. If he does file a brief, the State
            will have until February 6, 2014 to file a rebuttal.

1/10/14     State of Maine's Supplemental Memorandum on the Issue of Equal Protection, filed.
            s/Stokes, DAG

1/24/14     Notice of Appointment of Agent for Sending Printed Copy in Addition to My E-Mail
            Filings of the Supplemental Brief, filed 1/13/14. s/Bowler, Pro Se

1/24/14     Supplemental Supply Brief (unsigned), received 1/23/14, and returned to Petitioner for
            signature upon his return. Copy kept for file.

1/24/14     State's Reply Memorandum on the Issue of Equal Protection, filed. s/Stokes, DAG

3/28/14     Supplemental Supply Brief, filed 3/27/14. s/Bowler, Pro Se

4/24/14     ORDER, Murphy, J.
            Philip Bowler's appeal from the Office of the Attorney General's September 19, 2013
            decision is DENIED.
            Copy to Petitioner and DAG Stokes.
            Copy to repositories.

4/24/14     Notice of removal of Record sent to DAG Stokes.

Action:  <u>Petition for Review</u>
            80C

## J. Murphy

Phillip Bowler, Sr.                                  vs.                State of Maine, Office of Attorney General

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Phillip Bowler, Sr. - Pro Se<br>395 North Street<br>Burlington, VT  05401-1620 | William R. Stokes, DAG<br>6 State House Station<br>Augusta, ME 04333 |

Date of Entry

| | |
|---|---|
| 10/1/13 | Petition For Review, filed.  s/Bowler, Pro Se |
| 10/3/13 | Entry of Appearance for State of Maine, filed. s/Stokes, DAG |
| 10/4/13 | Amendment to the Summary of the Claim, filed 9/30/13.  s/Bowler, Pro Se |
| 10/7/13 | Certificate of Certified mail service on William R. Stokes. served 9/26/13. Filed 10/07/13 s/Bowler. |
| 10/23/13 | Phone conference scheduled for 10/25/13 at 2:30.<br>Parties contacted by Clerk's office on 10/18/13. |
| 10/23/13 | Plaintiff's Brief in re: Denial of Freedom of Access Act, filed 10/21/13.  s/Bowler, Pro Se |
| 10/29/13 | Phone conferenced held 10/25/13.  J. Murphy, Petitioner, DAG Stokes. |
| 10/29/13 | ORDER, Murphy, J.  (10/15/13)<br>Deputy AG Stokes has until 11/15/13 to file brief.  Court accepts Plaintiff's brief docketed on 10/23/13 as his filing.  Plaintiff has until 11/29/13 to file rebuttal brief.  Parties agree that factual assertions made in Mr. Bowler's appeal may be relied upon by Court as facts are not essentially in dispute.<br>Copy to Petitioner and DAG Stokes. |
| 11/13/13 | State of Maine's Memorandum of Law, filed 11/12/13.  Investigative Records filed under seal for *in camera* inspection by the Court, filed 11/12/13.  s/Stokes, DAG |
| 11/19/13 | Rebuttal Brief, filed 11/18/13.  s/Bowler, Pro Se |
| 11/19/13 | Oral argument scheduled for 11/25/13 at 10:00.<br>Notice of Hearing mailed to Petitioner and DAG Stokes. |
| 11/21/13 | Amendment to Rebuttal Brief, with Exhibits A and B, filed.  s/Bowler, Pro Se |

11/26/13      Oral argument held 11/25/13, J. Murphy presiding.
Petitioner and DAG Stokes appeared.
Tape 1772, Index 979-2067.
Under advisement.

12/10/13      Letter, filed 12/5/13. s/Martha Wolfe

12/10/13      ORDER FOR FURTHER BRIEFING, Murphy, J. (12/9/13)
The Court orders further briefing so that both parties can be fully heard on the issue of equal protection. The State shall file by January 10, 2014 a supplemental brief on the issue of whether an equal protection claim can be made under these circumstances; and if so, what standard of review the Court should use in analyzing the claim, and what the result of that analysis should be. Mr. Bowler has until January 24, 2014 to file a supplemental brief on the same issues. If he fails to do so, the Court will take the matter under advisement and issue a written decision without further oral argument. If he does file a brief, the State will have until February 6, 2014 to file a rebuttal.

1/10/14      State of Maine's Supplemental Memorandum on the Issue of Equal Protection, filed.
s/Stokes, DAG

1/24/14      Notice of Appointment of Agent for Sending Printed Copy in Addition to My E-Mail
Filings of the Supplemental Brief, filed 1/13/14. s/Bowler, Pro Se

1/24/14      Supplemental Supply Brief (unsigned), received 1/23/14, and returned to Petitioner for signature upon his return. Copy kept for file.

1/24/14      State's Reply Memorandum on the Issue of Equal Protection, filed. s/Stokes, DAG

3/28/14      Supplemental Supply Brief, filed 3/27/14. s/Bowler, Pro Se

4/24/14      ORDER, Murphy, J.
Philip Bowler's appeal from the Office of the Attorney General's September 19, 2013 decision is DENIED.
Copy to Petitioner and DAG Stokes.
Copy to repositories.

4/24/14      Notice of removal of Record sent to DAG Stokes.

5/6/14      Letter indicating what is believed to be a clerical error on page 7 of J. Murphy's 4/24/14 Order, filed 5/5/14. s/Stokes, DAG

8/14/14      ORDER, Murphy, J. (Corrected, 5/9/14)
Copy to Petitioner and DAG Stokes
Copy to repositories.