ENTERED AUG 0 7 2014

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-14-23
TDW-CUM-08-04-14

MAINETODAY MEDIA, INC.,

      Plaintiff

STATE OF MAINE
Cumberland. ss, Clerk's Office

v.

ORDER

AUG 05 2014

RECEIVED

STATE OF MAINE,

      Defendant

Before the court is plaintiff MaineToday Media, Inc.'s appeal from the denial by the Maine Attorney General's Office of certain requests for records under the Freedom of Access law, 1 M.R.S. §§ 408-A and 409.

The specific requests in question sought (1) the transcript of an E 911 call made by the wife of Stephen McKenney on April 12, 2014 and (2) any cruiser cam videos taken at the scene when law enforcement officers responded to the McKenneys' home at 2 Searsport Way in Windham in response to the E 911 call. The parties have stipulated that after law enforcement officers arrived at 2 Searsport Way, there was an armed confrontation outside the home and Stephen McKenney was fatally shot by a deputy sheriff.

The parties have also stipulated that the Attorney General's Office is conducting an investigation into the shooting pursuant to 5 M.R.S. § 200-A[1] and has obtained film footage from

---

[1] 5 M.R.S. § 200-A provides in pertinent part that the Attorney General "has exclusive responsibility for the direction and control of any criminal investigation of a law enforcement officer who, while acting in the performance of that law enforcement officer's duties, uses deadly force, as defined by Title 17-A, section 2, subsection 8."

cruiser cameras and the audio recording of the E 911 call from which a transcript has been prepared.

Appeals under the Freedom of Access law are heard de novo. 1 M.R.S. § 409(1). On such an appeal the burden of establishing just cause for the denial of the request falls upon the governmental agency seeking to withhold the records in question. MaineToday Media v. State of Maine, 2013 ME 100 ¶ 9, 82 A.3d 104. The Freedom of Access law is liberally construed and any exceptions to disclosure are to be strictly construed. Id.

In this case the parties have submitted the case upon certain stipulated facts and upon testimony and evidence offered at a hearing on May 30, 2014. At that hearing the Attorney General's office submitted the E 911 transcript and the cruiser cam videos for in camera review, and the parties thereafter submitted post-hearing memoranda.

The State bases its denial of the requested records on 1 M.R.S. § 402(3)(A), which exempts "records that have been designated as confidential by statute," from the definition of public records that must be made available for inspection and copying under 1 M.R.S. § 408-A. The specific confidentiality statute relied upon by the State is 16 M.R.S. § 804, subsections (1) and (3).

Those statutory provisions state that with certain exceptions not relevant in this case, any record

> that contains intelligence and investigative record information is confidential and may not be disseminated by a criminal justice agency to any person or public or private entity if there is a reasonable possibility that public release or inspection of the record would:
>
> **1. Interfere with criminal law enforcement proceedings.**
> Interfere with law enforcement proceedings relating to crimes; [or]
> . . .

2

**3. Constitute an invasion of privacy.** Constitute an unwarranted
invasion of personal privacy.

There is no dispute that the requested cruiser cam videos and the E 911 transcript contain intelligence and investigative record information as defined by 16 M.R.S. § 803(7). The issue in this case is whether the State has met its burden of demonstrating that there is a reasonable possibility that public release of the requested records would interfere with law enforcement proceedings or constitute an unwarranted invasion of privacy.

Interference with Law Enforcement Proceedings

With respect to the State's invocation of 16 M.R.S. § 804(1), this case turns on the degree of specificity by which the State is required to show that there is a reasonable possibility that the requested records would interfere with law enforcement proceedings.

The stipulation establishes that a criminal investigation is ongoing. The testimony of Brian MacMaster[2] at the May 30 hearing establishes that the Attorney General's office has initially followed its standard protocol in deadly force investigations by (1) securing the scene and collecting physical evidence, (2) photographing and mapping the scene, and (3) conducting separate audiotaped interviews of the officers involved and of other witnesses, including Mrs. McKenney. However, as of the date of the hearing MacMaster had not read or listened to the witness statements. Moreover, the investigation will not be complete until the Attorney General's office receives the medical examiner's report and the results of any forensic analysis from the crime lab and has reviewed and evaluated all of the witness statements and other evidence.

MacMaster testified that before the investigation is complete and the Attorney General's office makes a decision on whether any prosecution is warranted, it is "very common" for

---

[2] MacMaster is the Director of Investigations at the Attorney General's Office and has held that position since 1984. In that capacity, he is in charge of the investigation into the shooting of Stephen McKenney.

3

witnesses to be reinterviewed. This would occur if there are material inconsistencies between the statements of witnesses or inconsistencies between the statements of any witnesses and the forensic evidence. This would include inconsistencies between the statements of witnesses and the electronic evidence sought by MaineToday Media in this case – the cruiser cam videos and the E 911 call.

The concern of the State, as testified to by MacMaster, is that although the initial interviews have been performed, the testimony or recollections of any witnesses who may be reinterviewed could be affected by the public release of the cruiser cam videos and the E 911 call. Specifically, in the event that the Attorney General's office seeks to reinterview witnesses – which MacMaster described as a real possibility – witnesses may tailor their testimony to account for what they have seen or heard on a cruiser cam video.[3] The testimony of witnesses who may be reinterviewed may also be tainted by the possibility that those witnesses will innocently fill in voids in their memory based on the cruiser cam videos.

MaineToday Media points out that MacMaster's testimony has not demonstrated any specific issues on which the State intends to reinterview witnesses or any specific instances of potential contamination. It therefore contends that the showing made by the State falls short of the "particularized" showing of potential interference required by the Law Court in the 2013 MaineToday case and by certain federal court of appeals decisions under the federal Freedom of Information Act. See 2013 ME 100 ¶ 31; Campbell v. Department of Health and Human

---

[3] The cruiser cam videos include simultaneous audio, including radio transmissions. As a result, although video from a camera mounted on the dashboard of a cruiser will only show events that occur in the direction that the vehicle is facing, it will often contain audio evidence of events occurring offscreen. It also bears emphasis that even when cruiser cam videos do not capture portions of an event, the release of those videos could inform witnesses as to which aspects of the event have not been captured on camera. This might affect their testimony if they are reinterviewed.

4

Services, 682 F.2d 256, 265-66 (D.C. Cir. 1982); Sussman v. U.S. Marshal's Service, 494 F.3d 1106, 1114 (D.C. Cir. 2007).

It is possible to interpret the Law Court's 2013 MaineToday decision to require such a showing. However, the 2013 MaineToday decision is distinguishable because in that case the State's only explanation for its claim of possible interference "merely reiterated the language of the statute." 2013 ME 100 ¶ 29. That was also the defect noted in the D.C. Circuit's decision in Campbell v. Department of Health and Human Services, 682 F.2d at 259 (rejecting the agency's position that it only needed to demonstrate that "the withheld information was clearly related to an ongoing investigation").

In contrast, the First, Sixth, and Eighth Circuits have held that under the comparable federal exemption in 5 U.S.C. § 552(b)(7)(A) the government does not have to make a document–by–document showing of potential interference but may rely upon "generic determinations of likely interference." Curran v. Department of Justice, 813 F.2d 473, 475 (1st Cir. 1987). See Crancer v. Department of Justice, 999 F.2d 1302, 1306-07, 1309-10 (8th Cir. 1993) (en banc); Dickerson v. Department of Justice, 992 F.2d 1426, 1431 (6th Cir. 1993).

Those decisions rely upon the U.S. Supreme Court's decision in NLRB v. Robbins Tire and Rubber Co., 437 U.S. 214, 234-36, 239-42 (1978). Indeed, in expressly approving "generic determinations of likely interference," 813 F.2d at 475, the First Circuit in Curran was quoting from Robbins Tire, 437 U.S at 236. The Supreme Court in Robbins Tire stated that

> [a]lthough Congress could easily have required in so many words that the Government in each case show a particularized risk to its individual enforcement proceeding, it did not do so.

437 U.S. at 234.

5

The federal caselaw allowing a generic showing that there is a reasonable possibility of interference, therefore, is inconsistent with MaineToday Media's argument that the State must specifically demonstrate how each particular record requested would potentially interfere with its investigation. The language of 16 M.R.S. § 804(1) is almost identical to the comparable language in the federal statute exempting from disclosure investigatory records that could reasonably be expected to interfere with law enforcement proceedings. 5 U.S.C. § 557(b)(7)(A). Moreover, as the Law Court noted in the 2013 MaineToday case, cases decided under the federal Freedom of Information Act inform the court's analysis under Maine's Freedom of Access law. 2013 ME 100 ¶ 8 n.5.[4]

In addition, if the State were required to specifically delineate specific issues on which it intended to reinterview witnesses or specific concerns with respect to potential contamination, it would necessarily have to disclose specific investigative details which could themselves interfere with the investigation. As a result, the court concludes that if presented with this case, the Law Court would not requite the kind of particularized showing of specific interference that MaineToday Media contends is necessary – while firmly adhering to its holding rejecting confidentiality based the mere incantation that investigatory records are involved.

The court has reviewed the cruiser cam videos in camera and finds that there is a reasonable possibility that the release of the video and audio information on those videos would interfere with the investigation by potentially affecting the testimony of any witnesses who are reinterviewed. Affecting the memories of witnesses and potentially allowing witnesses to tailor their testimony to the public record has been found to constitute a basis for nondisclosure in such

---

[4] In addition, there is no difference between the presumptions applied under the federal statute and those applied under Maine law. Exemptions under the federal Freedom of Information Act, like those under Maine's Freedom of Access law, are narrowly construed, with doubts resolved in favor of disclosure. See Carpenter v. U.S. Department of Justice, 470 F.3d 434, 438 (1st Cir. 2006).

6

cases as Robbins Tire, 437 U.S. at 241-42; Dickerson v. Department of Justice, 992 F.2d at 1433, and Western Journalism Center v. Office of Independent Counsel, 926 F.Supp. 189, 192 (D.D.C. 1996).

Indeed, in its 2013 MaineToday decision the Law Court specifically noted that the Attorney General's office had not suggested that the release of the 911 transcript at issue in that case might cause witnesses to amend their testimony. 2013 ME 100 ¶ 31. That is the potential interference that has been articulated here and which the court's in camera review of the cruiser cam videos has confirmed. The cruiser cam videos are therefore exempt from disclosure under 1 M.R.S. § 402(3)(A) and 16 M.R.S. § 804(1).

However, the court does not find that the State has met its burden with respect to the transcript of the E 911 call. Calls to 911 may fall into two general categories. One involves cases where statements made in an E 911 call or the events recounted in the call may themselves be of significance in the investigation. This would be true, for example, in a 911 call relating to domestic violence. In those instances, there could be a reasonable possibility that disclosure of the E 911 transcript would interfere with the investigation by affecting the testimony or recollection of witnesses who needed to be reinterviewed (or who had not yet been interviewed at all).

The E 911 call in this case, however, falls into a second category – where a 911 call sets events in motion but the resulting investigation does not involve any of the statements in the call or the events recounted in the call. The investigation here involves the actions of law enforcement officers after they arrived at 2 Searsport Way in response to the 911 call. No showing has been made that there is any dispute or uncertainty about the 911 call or the content of that call, and the court does not find that there is a reasonable possibility that the recollections

7

of any witnesses would be tainted or affected by release of the contents of that call. Accordingly, the State has not met its burden of showing that release of the 911 transcript, under the circumstances of this case, would have a reasonable possibility of interfering with the investigation.

Unwarranted Invasion of Privacy

The remaining question is whether the requested records, including the E 911 transcript, fall under the protection of 16 M.R.S. § 804(3), because their release would constitute an unwarranted invasion of personal privacy under 16 M.R.S. § 804(3). This requires balancing (1) the personal privacy interests of the individuals involved and (2) the public interest supporting disclosure. Blethen Maine Newspapers Inc. v. State, 2005 ME 56 ¶ 14. In this case virtually none of the testimony at the May 30 hearing addressed those issues, but the personal privacy issues at stake are apparent from the actual content of the records involved.

The E 911 transcript would disclose information as to which there is a significant interest in personal privacy: the information involving Stephen McKenney that was communicated in the E 911 call. However, the court concludes that the public interest in evaluating the use of deadly force by law enforcement officers – and in evaluating the review of deadly force incidents by the Attorney General's office – outweighs the McKenneys' personal privacy interests with respect to the E 911 transcript. The E 911 call, along with the circumstances that existed once officers arrived at 2 Searsport Way, formed the basis for the law enforcement response that ultimately resulted in the death of Stephen McKenney. There is a significant public interest in evaluating that response.

8

Although the State's objection to disclosure of all of the cruiser cam videos has been upheld for the reasons stated above, two of those cruiser cam videos also raise a significant personal privacy issue. Those are the cruiser cam videos from the vehicle in which Mrs. McKenney was seated when her husband was shot. Both the audio from that vehicle's dashboard camera and the audio and video from a second camera directed at the vehicle's passenger compartment record Mrs. McKenney's anguished reaction. There is absolutely no public interest that would justify the invasion of Mrs. McKenney's privacy that would result from the release of those two videos.

Accordingly, those two videos are alternatively exempt from disclosure pursuant to 16 M.R.S. § 804(3).

The entry shall be:

1. The State's denial of the cruiser cam videos requested by plaintiff MaineToday Media Inc. is upheld.

2. The State is ordered to release the E 911 transcript requested by plaintiff.

3. This order shall be stayed for 21 days from the date on which it is entered. The stay shall terminate after 21 days unless within that time the Attorney General's office files an appeal with respect to the E 911 transcript and a motion for a stay pending appeal. In that event the stay shall continue until the parties can be heard on the motion for a continued stay pending appeal.

4. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: August  5 , 2014

Thomas D. Warren
Justice, Superior Court

9

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JANET MILLS AG
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE
AUGUSTA ME 04333-0006

*Defendant's Attorney*

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

SIGMUND SCHUTZ ESQ
PRETI FLAHERTY
PO BOX 9546
PORTLAND ME 04112-9546

*Plaintiff's Attorney*