STATE OF MAINE                                    SUPERIOR COURT
LINCOLN, ss.                                      CIVIL ACTION
                                                  DOCKET NO. CV-20-22

OSMAN PAGE, LLC d/b/a            )
ARIDAH MANAGED SERVICES         )
                                )
          Plaintiff,            )
                                )          **DECISION AND ORDER**
     v.                         )
                                )
BOOTHBAY    REGION    WATER     )
DISTRICT,                       )
                                )
          Defendant             )

## INTRODUCTION

The matters before the court are Defendant Boothbay Region Water District's

("BRWD") motion to dismiss and motion for judgment on the pleadings against Plaintiff

Osman Page, LLC d/b/a Aridah Managed Services ("AMS"). The court finds that this

is a justiciable controversy and rules for BRWD on the pleadings.

## BACKGROUND

This dispute concerns an agreement between BRWD and AMS for accounting and

related services, signed March 20, 2012. (Compl. ¶ 7.) The agreement contains a non-

solicitation provision that provides:

> [BRWD] shall not, during the term of this Agreement and for a period of one
> hundred eighty (180) days after the termination of this Agreement, irrespective of
> the cause, manner, or time of such termination, solicit any employee or contractor
> of [AMS]. Unless otherwise formally agreed, in the case [BRWD] hires or retains
> [AMS] employees or contractors under the conditions of this paragraph, [BRWD]
> agrees to pay [AMS] a placement fee in the amount of fifty thousand dollars
> ($50,000), payable immediately to [AMS].

(Compl. ¶ 9.)

AMS assigned one of its workers, Marcia Wilson, to provide the accounting

services to BRWD under this agreement. Compl. ¶ 10. On August 12, 2020, Ms. Wilson

quit her position with AMS and, on the subsequent day, began working for BRWD,

1

performing substantially the same work for BRWD as she did when she was employed by AMS. (Compl. ¶¶ 11-12.)

In 2019, the Maine Legislature enacted 26 M.R.S. § 599-B. Effective September 19, 2019, § 599-B provides that 2 or more employers may not enter into a restrictive employment agreement, which the statute defines as one that "[p]rohibits or restricts one employer from soliciting or hiring another employer's employees or former employees." 26 M.R.S. § 599-B(1). Employers are prohibited from entering into these agreements or enforcing or threatening to enforce them. 26 M.R.S. § 599-B(2). Violating either of these prohibitions is a civil violation, enforceable by the Department of Labor, for which a fine of not less than $5,000 may be adjudged. 26 M.R.S. § 599-B(3).

A dispute has arisen between BRWD concerning the applicability and effect of § 599-B on the Non-Solicitation Provision in their 2012 agreement. On October 16, 2020, AMS filed this action seeking declaratory judgment setting out the parties' respective rights and obligations under the agreement and § 599-B. Specifically, AMS seeks answers to four questions: (1) whether § 599-B applies retroactively to the 2012 agreement; (2) whether the placement fee provided for in the Non-Solicitation Provision constitutes a "restrictive employment agreement" under § 599-B; (3) whether § 599-B violates AMS's due process rights; and (4) whether AMS may enforce the Non-Solicitation Provision. (Compl. ¶ 17.)

## STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Facts

2

are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted). On the other hand, "a party may not . . . proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228 (quotation marks omitted).

## DISCUSSION

The dispute before the court breaks down into three issues: (1) whether this dispute is justiciable; (2) if it is, whether 26 M.R.S. § 599-B bars AMS from enforcing the Non-Solicitation Provision in its contract with the Town; and (3) whether § 599-B violates AMS's due process rights.

### I. Justiciability

AMS has brought this action under the Uniform Declaratory Judgments Act (DJA). The Act provides, in the relevant part:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

3

14 M.R.S. § 5954. It is uncontested, and correctly so, that this language applies to AMS's claims. However, the DJA "may only be invoked where there is a genuine controversy." *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384.

"A genuine controversy exists if a case is ripe for judicial consideration and action." *Id.* Ripeness is a two-pronged inquiry focused on "the fitness of the issue for judicial decision, and the hardship to the parties of withholding court consideration." *Id.* The Law Court has held that for a controversy to be fit for judicial consideration it must pose a "concrete, certain, or immediate legal problem." *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 21, 221 A.3d 554.

This case represents a genuine controversy. The positions of the parties are clearly defined: BRWD argues that § 599-B renders the Non-Solicitation Clause unenforceable and AMS argues that it does not. Furthermore, all of the factual developments have already occurred, as the alleged breach of this provision occurred the moment BRWD hired Ms. Wilson. The parties do not substantially differ on the facts, they simply disagree on the law. Therefore, this case presents a fully developed issue fit for judicial consideration.

Hardship would clearly result to AMS if the court declined to issue a declaration of its rights. As AMS points out, if the court were to determine that § 599-B prohibits the enforcement of the provision, it could be liable for a fine of "not less than $5,000" if they attempted to enforce it. 26 M.R.S. § 599-B(3). Hardship could not be clearer.

BRWD argues that the matter is not justiciable because AMS is not seeking to enforce the provision at this time. In essence, it argues that unless AMS seeks to enforce the provision at issue here, the court can issue nothing but an advisory opinion. However, actions under the DJA are inherently anticipatory in nature. The statute is expressly designed to grant parties relief in circumstances where their legal obligations

4

may be unclear, rather than force them to guess and risk breaking the law and incurring additional liability. BRWD's argument would use standing doctrine to essentially swallow the entire DJA, forcing parties to risk legal violations even when the issues are already ripe for review. The court rejects this interpretation.

Matters such as this are exactly the sort of disputes that the DJA was enacted to resolve. In light of the fact that the factual and legal issues are fully developed and that hardship would clearly result to AMS if the court declined to decide this case on the merits, this matter is ripe for adjudication. The court will decide the case on the merits.

## II.    § 599-B

The merits of this case principally concern whether § 599-B applies to the Non-Solicitation Clause at issue or not. The statute makes it a civil violation for an employer to "enter into a restrictive employment agreement" or "enforce or threaten to enforce a restrictive employment agreement." 26 M.R.S. § 599-B(2). A restrictive employment agreement is defined as an agreement "between 2 or more employers, including through a franchise agreement or a contractor and subcontractor agreement" that "prohibits or restricts one employer from soliciting or hiring another employer's employees or former employees." 26 M.R.S. § 599-B(1). This statute was enacted after the 2012 contract between the parties.

AMS makes two arguments against the applicability of this statute to the Non-Solicitation Provision. First, it argues that it does not apply because the statute does not apply retroactively to contracts formed prior to the date the statute passed. Second, it argues that the Non-Solicitation Provision is not a restrictive employment agreement as defined by the statute. Neither argument is availing.

5

When interpreting a statute, Maine courts follow a well-established procedure:

> [W]e first look to the plain language of the provisions to determine their meaning. If the language is unambiguous, we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd. If the plain language of a statute is ambiguous—that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent.

*Mainetoday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 (quotations and citations omitted).

The plain language of the statute prohibits two types of activity: "entering" into restrictive employment agreements and "enforcing or threatening to enforce" restrictive employment agreements. AMS argues that prohibition on enforcing restrictive employment agreements would be retroactive if applied to attempts to enforce contracts entered into before the statute's effective date. Thus, it argues, absent evidence of the legislature's intent that this statute be applied retroactively, § 599-B does not apply to their agreement with BRWD.

AMS's reading cuts against the plain language of the statute. The inquiry could stop here, as it would take a particularly obtuse reading of the statute to find that a lawsuit to enforce a provision of a contract was not enforcing a restrictive employment agreement under the statute. AMS makes much of the ways in which not allowing it to enforce this contract provision would leave them with no way of protecting their investment in their employees and upset the terms of their bargain with BRWD, but it offers no explanation for how a statute that specifically prohibits both the creation and enforcement of restrictive employment agreements can be given full effect if the enforcement provision is read restrictively to only apply to agreements created after its effective date.

6

AMS quotes the Supreme Court, which said in *Landgraf v. Usi Film Prods.*, "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." 511 U.S. 244, 269 (1994). It argues that failing to allow for the enforcement of rights established in contracts prior to the statute's effective date would therefore impair its vested rights under the contract. While this statute clearly modifies the status of the parties' prior relationship, an attempt to enforce the clause requires separate legal action, such as filing a lawsuit. It is this action that is specifically forbidden by 26 M.R.S. § 599-B(2)(B)'s prohibition on enforcing restrictive employment agreements. This action is prospective, not retroactive, because it concerns the legal status of actions taken after the effective date of the statute. *See Liberty Mut. Ins. Co. v. Superintendent of Ins.*, 1997 ME 22, ¶ 9, 689 A.2d 600 ("the application of a statute remains prospective if it governs operative events that occurred after its effective date, even though the entire state of affairs includes events predating the statute's enactment").

Further support for this interpretation is given by a recent decision of the U.S. District Court for the District of Maine. In *Woodlands Senior Living, LLC v. Mas. Med. Staffing Corp.*, § 599-B's validity was challenged, in part on the basis that barring enforcement of a restrictive employment agreement where the lawsuit was already pending at the time the statute was enacted would render the statute retrospective. No. 1:19-cv-00230-JDL, 2020 U.S. Dist. LEXIS 219132 (D. Me. Nov. 23, 2020). Judge Levy rejected this argument, holding "it is reasonable to infer that the authors of the bill sought to prevent courts from entering judgments enforcing employment agreements that restrict such free movement, no matter when the underlying complaint was filed." *Id.* at *13. If this reasoning applies to a lawsuit that was already filed at the time the statute

was enacted, then it surely applies to a lawsuit filed after the statute was enacted. The court agrees with Judge Levy's interpretation, and finds that the statute applies prospectively to prohibit parties from seeking, and courts from entering, orders enforcing restrictive employment agreements after its effective date.

AMS's argument that the Non-Solicitation Provision is not a restrictive employment agreement under the statute has no merit. The statute defines a restrictive employment agreement as an agreement between employers that "prohibits or restricts one employer from soliciting or hiring another employer's employees or former employees." 26 M.R.S. § 599-B(1). The provision at issue specifically states that BRWD "shall not" solicit any of AMS's employees and that if they do, they must pay a $50,000 fee. AMS tries to minimize the restriction this poses, saying that it does not actually forbid BRWD from hiring its former employees, it only imposes a $50,000 fee to "compensate[] AMS for its investment of resources into its employees." (Opp. at 12.) This $50,000 fee imposes a significant burden on BRWD if it wishes to hire AMS employees, which combined with the explicit language forbidding BRWD from doing so makes this a clear example of a restrictive employment agreement.

To the extent that AMS argues that § 599-B does not apply to agreements between staffing agencies and their clients, the court rejects it. § 599-B states that restrictive employment agreements may be between "2 or more employers, including through a franchise agreement or contractor and subcontractor agreement." 26 M.R.S. § 599-B(1)(A). There is no limiting language here that would indicate that the legislature intended to exclude relationships like the one between AMS and BRWD. Contrary to AMS's assertions to the contrary, there is nothing ambiguous here. Therefore, the statute applies.

## III. Due Process

AMS finally argues that if § 599-B would invalidate the Non-Solicitation Provision in the contract, this is an impermissible infringement on its substantive due process rights. Both the Maine and Federal Constitutions provide that no person shall be deprived of "life, liberty or property without due process of law." U.S. Const. amd. XIV, § 1; Me. Const. art. I, § 6-A. The substantive due process rights enshrined in both constitutions are coextensive. *Doe v. Williams*, 2013 ME 24, ¶ 65, 61 A.3d 718.

"If state action infringes on a fundamental right or fundamental liberty interest, the infringement must be narrowly tailored to serve a compelling state interest." *Id.* ¶ 66. If it does not implicate either of these, then the challenged state action will be upheld "if it is reasonably related to a legitimate state interest." *Id.* This is a broad standard, and requires the court to uphold the statute if "any conceivable state of facts exists to support the statute." *Aseptic Packaging Council v. State*, 637 A.2d 457, 460 (Me. 1994).

AMS concedes, correctly, that the property interest at issue here is neither a fundamental right or fundamental liberty interest. Therefore, the court must inquire whether § 599-B is rationally related to a legitimate state interest. AMS argues that it is not, because it reads a very narrow purpose into the statute, to keep workers from having to seek employment outside of Maine due to overly restrictive employment agreements, based on the name of the bill and some comments in the legislative history. AMS argues that its agreement with BRWD has nothing to do with this goal because Ms. Wilson is still technically free to work wherever she wishes.

AMS's arguments are unavailing. It takes a far too limited view of what it means for a statute to be "reasonably related" to a state interest. Forcing companies to pay an additional fee to hire a worker increases the likelihood that they will choose not to hire them. This is the essence of the prohibition on restrictive employment agreements. While

9

it is not a given that every such restrictive agreement will force workers to seek employment outside the state, prohibiting these agreements certainly increases the likelihood that workers will remain in the state as they seek to advance their careers, simply by the fact that it increases competition in the labor market.

The statute also advances a number of other legitimate state interests. AMS apparently misunderstands the law to mean that the statute must bear a reasonable relationship to a specific purpose stated by the legislature, when all that is actually required is that it must bear a reasonable relationship to *any* legitimate state interest. Thus, the court is not limited to what is in the legislative record, though this can often be a useful guide. The legislation also plainly advances other legitimate state interests, such as promoting competition in the labor market (a legitimate interest in itself) and allowing workers to seek jobs with higher pay, better benefits and myriad other potential advantages. Removing employment agreements which may pose barriers to workers attempting to change employment is straightforwardly related to those goals.

The statute is clearly reasonably related to a legitimate state interest and the court holds that it is constitutional.

## IV. Attempt to Enforce

BRWD argues in their reply that if the court finds there is a justiciable controversy here, it must rule that this is an illegal attempt to enforce a restrictive employment agreement that opens AMS up to liability under 26 M.R.S. § 599-B(3). For clarity's sake, the court explicitly rejects this argument.

Leaving aside the fact that the statute explicitly leaves enforcement of that section to the Department of Labor, this lawsuit does not qualify as an attempt to enforce a restrictive employment agreement. This is an action for declaratory judgment where AMS is seeking to clarify its rights under the contract as they relate to the provisions of §

10

599-B. The fact that AMS would likely seek to enforce the provision if the court ruled in its favor here should go without saying, but this does not mean that AMS is attempting to enforce the provision merely by filing this lawsuit. Rather, a fairer framing of events is that it is seeking to determine whether it would be illegal for it to enforce the provision before risking legal liability by attempting to do so. It is possible that other actions already taken by AMS may open it to liability under the statute, but this lawsuit on its own is not grounds for a civil violation.

## CONCLUSION

For the foregoing reasons, judgment on the pleadings is GRANTED for Defendant Boothbay Region Water District. The Motion to Dismiss is DENIED.

The court finds the following:

(1) § 599-B applies to lawsuits seeking enforcement of restrictive employment agreements regardless of when the contracts at issue were formed;

(2) the placement fee provided for in the Agreement is a restrictive employment agreement under the statute;

(3) § 599-B does not violate Osman Page d/b/a Aridah Managed Services' due process rights; and

(4) Osman Page d/b/a Aridah Managed Services may not enforce the Non-Solicitation Provision.

DATED: March 8, 2021

Daniel I. Billings, Justice
Maine Superior Court

11